[Civ. No. 46397. Second Dist., Div. Five. June 17, 1976.]

In re the Marriage of MARGARET M. and GEORGE M. AMES.
MARGARET M. AMES, Appellant, v.
GEORGE M. AMES, Respondent.

COUNSEL

Robert L. Brock for Appellant.

Rhodes & Feder and Jerome H. Rhodes for Respondent.

OPINION

KAUS, P. J.—Petitioner Margaret M. Ames appeals from an interlocutory judgment of dissolution of marriage, excepting that portion which dissolves the marriage. Respondent is George M. Ames. Margaret challenges: (1) the spousal support orders and various items in the community property division, including (2) the trial court's failure to consider and divide all of George's pension rights, and (3) the child support orders.

FACTS

The parties were married in 1963 and separated in 1972. They have one daughter, Sarah, born in 1965. At the time of trial, George was 42 years and Margaret was 37 years old.

Margaret holds a credential as an elementary teacher and had been teaching part-time, earning $165 a month. George was employed by a construction company and earned $40,000 a year, of which $23,000—less deductions—was paid in weekly installments and the remainder of $16,500 was paid in a lump sum on or before June 30 of each year, or when George's company had enough cash.[1]

George also participated in a profit sharing plan. His vested share at the time of trial was about $19,000. An additional $8,000 had not vested when the parties separated, but would eventually vest at about $2,700 per year.[2]

[1] The construction company was owned and operated by one man.

[2] The parties disagree concerning the actual vesting date. The exact date is immaterial at this point and will doubtless be resolved on remand.

## DISCUSSION

### Miscellaneous Contentions

We can quickly dispose of some of Margaret's complaints concerning the division of community property and the spousal support order.[3]

The trial court did not abuse its discretion in making the following orders: (1) In ordering George to pay Margaret one-half of $13,443 owed him only when he received that amount, the collectibility of the debt being in doubt; (2) In allowing George to deduct as a proper community expenditure $2,500 paid in taxes on $8,250 of community income, Margaret having made no effort to show that this amount was unreasonable; (3) In finding that $8,250 owed to George by his employer for compensation earned after the parties' separation was his separate property. Nothing in an "interim distribution" order on which Margaret relies purported to determine that the asset was community property. (See Civ. Code, § 4357.) (4) In treating as a community obligation a $2,050 loan obtained by George to pay support, since the court treated in similar fashion a $2,318 loan obtained by Margaret after the parties separated. (5) In ordering George to pay some of the spousal support annually, since, as noted, he himself was partly paid annually.

We shall now discuss the more substantial issues.

### Community Property

Margaret contends that the trial court abused its discretion in finding that George had properly accounted for $24,655 of community property. We agree. Excluding amounts paid for taxes—and here Margaret is simply arguing that the trial court should not have believed George's accountant—there remains about $9,000 unexplained by George.[4]

The more substantial issues on appeal involve the pension rights and child support.

---

[3]The dissolution was, apparently, not a friendly one. The court made additional orders in connection with the interlocutory judgment which included the following: "The parties own approximately . . . 50 potted plants. . . . Respondent shall pick the first plant; Petitioner the next, and the parties alternating thereafter.

[4]No useful purpose would be served by recapitulating how we—on a most benign reading of an incredibly vague record—arrived at this figure. We may well be substantially off the mark. We are, however, quite satisfied that George failed to sustain his burden by a very large amount.

## Pension Rights

The parties agree that George had a vested interest in his employer's profit sharing plan in the amount of $18,997 and an unvested interest in the amount of $8,141. The trial court included the vested portion in the division of the community assets, but finding that the "non-vested" portion was "inchoate," and "uncollectible" did not include that amount in the community assets. The Supreme Court in *In re Marriage of Brown,* 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561], eliminated the distinction between so-called vested and unvested interests in such plans. Accordingly, the judgment must be reversed to permit the trial court to consider the nonvested portion of George's interest in the profit sharing plan in a manner consistent with the rules set forth in *Brown.*

## Child Support

The trial court ordered George to pay Margaret $100 a month for the support of Sarah, the parties' daughter, who was approaching her ninth birthday at the time of the judgment. Margaret asserts that this amount constitutes an abuse of discretion, and that the award is "below that sufficient to maintain the child even at the poverty level." Hyperbole aside, we agree.

"A parent's duty of support does not necessarily end with the furnishing of mere necessities; a minor child is entitled to be maintained in a style and condition consonant with his parents' position in society; . . ." (*Chapin* v. *Superior Court,* 239 Cal.App.2d 851, 856 [49 Cal.Rptr. 199]. See also *Caldwell* v. *Caldwell,* 204 Cal.App.2d 819, 821 [22 Cal.Rptr. 854]; cf. *Armstrong* v. *Armstrong,* 15 Cal.3d 942, 947-949 [126 Cal.Rptr. 805, 544 P.2d 941].)

George earned an annual gross income of $40,000.[5] After taxes and spousal support payments, his net income was about $17,400 per year, or $1,450 per month. To set aside a mere $100 per month for the total support of a minor child constitutes a gross abuse of discretion. (See, e.g., *In re Marriage of Cosgrove,* 27 Cal.App.3d 424, 432 [103 Cal.Rptr. 733].)

---

[5]Plus $125 per month for automobile expenses.

Citing mostly cases from the days of the five-cent cigar, George somewhat halfheartedly suggests that the amount awarded was within the trial court's discretion because Margaret made no specific showing concerning the child's needs. We cannot agree. Granting that even at today's level of inflation $100 is sufficient to provide Sarah with the bare necessities of life, the only child of a father who nets for himself, after taxes, $1,450 per month and has no unusual expenses, is obviously entitled to something more than just enough to survive.

George's real argument in support of the adequacy of the award is to the effect that Margaret can and should be expected to contribute "some portion of the $716.00 per month spousal support . . . for the benefit and welfare of the minor child . . . ." He suggests that if the total monthly package of $816 per month is adequate to support both mother and child, it should be of no concern to us that an inadequate part of the total has been labelled child support.[6] In this connection, it may be significant that Margaret, who is unhappy about practically everything else in the judgment, says that she "does not question either the amount or the duration of the order for spousal support."

If the trial court did, indeed, award child support in the guise of spousal support, it erred. We have found no authority in support of George's theory that the sufficiency of each separate award depends on the adequacy of the total package. Under section 4801 of the Civil Code, spousal support is to be awarded "for the support of the other party . . . ." Similarly, under section 4700, child support is to be an "amount necessary for the support, maintenance, and education of the child." The exhaustive list of considerations for the determination of the proper amount of spousal support found in *In re Marriage of Lopez,* 38 Cal.App.3d 93, 116-117 [113 Cal.Rptr. 58], contains no hint that the court is to include in the award to the spouse any contribution for the support of the child.

---

[6]George claims that "[i]t is not uncommon in the family law practice for trial courts to determine a 'cash flow' amount necessary for the support and maintenance of the wife, child, and/or children. The subsequent allocation of the total cash flow, deemed to be necessary between spousal support and child support is of less moment to the parties than the total amount ordered." That may be so, particularly since in most cases a definite income tax advantage can be realized by designating what is meant to be child support as alimony and having the mother declare it at her lower rate. However, what is commonly done is not necessarily what should be done, particularly if the parties insist on their rights and the courts are vigilant to protect the interests of children.

A little reflection will demonstrate the potential prejudice inherent in George's theory: In a typical case spousal support will cease on the mother's remarriage. (Civ. Code, § 4801, subd. (b).) To continue to obtain an adequate award, the children would then be obligated to show a change in their circumstances. However, as the adequacy of the original award would be presumed, and since the mother's remarriage would not be a change in the circumstances of the children, such proof would be impossible. For example: in this very case the court ordered that all spousal support cease after November 1, 1976.[7] This was done for the good and obvious reason that the court felt that in view of her earning ability Margaret should be self-supporting by then. The effect of the judgment could, however, be disastrous for Sarah: Margaret may not be self-supporting in November 1976, yet be unable to persuade the trial court to exercise its retained jurisdiction to award further spousal support—perhaps, because the court feels that she has not made a good faith effort to earn a living. (*In re Marriage of Dennis, supra,* 35 Cal.App.3d 279, 285.) Nevertheless, Sarah's needs and circumstances would not have changed. Thus, her future ability to obtain adequate support from her father is hostage to Margaret's ability to persuade the court that she is entitled to spousal support for a more extended period than was found warranted at the time of the dissolution—an irrelevant consideration. (See *Dunlap* v. *Dunlap* (1945) 145 Neb. 735, 738 [18 N.W.2d 51, 52-53].)

We must, however, make it clear that our discussion merely takes issue with George's attempted justification for the inadequate award for Sarah. Nothing in the record would justify us in finding that the trial court did, in fact, award more to Margaret than it found just and reasonable for her support alone. The trial court knows best whether a downward adjustment is called for.

The portions of the judgment dividing the community property and awarding child and spousal support are reversed.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied July 2, 1976, and appellant's petition for a hearing by the Supreme Court was denied August 12, 1976.

---

[7]The court did, however, retain jurisdiction to award further spousal support after that date. (*In re Marriage of Dennis,* 35 Cal.App.3d 279, 284-285 [110 Cal.Rptr. 619].)