[No. A038366. First Dist., Div. Two. Sept. 13, 1988.]

In re the Marriage of CONNI T. and PATRICK E. CATALANO.
CONNI T. CATALANO, Appellant, v.
PATRICK E. CATALANO, Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Paige Wickland for Appellant Wife.

Frank L. Crist, Jr., and Crist, Griffith, Schultz & Bjorn for Appellant Husband.

**OPINION**

**McCARTY, J.**\*—Conni T. Catalano (wife) appeals from an order awarding her increased child support from former husband Patrick E. Catalano (husband). She challenges the increase as too low. Husband cross-appeals

---

\*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

from the order, which also granted wife an award of attorney fees, and from a later order fixing the amount of those fees. He challenges both the increase and fee award as unjustified.

## BACKGROUND

The parties' marriage lasted about six years and was dissolved by an interlocutory judgment filed in October 1983. They had separated in 1981 and had one child, a son, Jannik, who was age six at the time of the judgment. For the four years before the separation, wife worked full-time as a registered nurse specializing in cardiac work and attained earnings from $25,000 to $30,000 a year. She ceased working full-time at the time of separation. Husband's income at the time of judgment was apparently about $50,000 a year.

The judgment, as modified in December 1983, awarded wife physical custody of Jannik, with reasonable visitation to husband, monthly spousal support of $1,750 and monthly child support of $475. Wife also received an equalizing cash payment of $80,000 (which she invested in certificates of deposit), a home in Santa Rosa (worth $174,000 in 1983 and encumbered by a mortgage of undisclosed amount) and a 1980 Mercedes-Benz station wagon.[1]

Wife moved in March 1985 to increase both child and spousal support, citing her then-current lack of employment. Negotiations led to a stipulated modification order (effective Apr. 1985) under which child support stayed the same, spousal support was increased to $2,625 monthly, and wife waived forever any right to spousal support after December 31, 1986. Wife found part-time employment as nurse to a private physician in Santa Rosa from March through August of that year and then full-time employment with another such physician through July 1986. She worked after that part-time, three days a week, as an on-call "pool" nurse on night shifts at Community Hospital in Santa Rosa.

The instant appeal arises from a motion wife made in December 1986, the month after which all further spousal support would end, for an increase of monthly child support from $475 to $2,000. She cited inability to find full-time work, reductions of capital to meet expenses, reduced interest income, the prospective termination of spousal support, past reliance on that support to meet ordinary expenses for Jannik, and husband's dramatic increase

---

[1] The record does not include the 1983 judgment or any income and expense declarations submitted before the December 1986 proceedings that directly concern us on this appeal. We therefore rely on the parties' sometimes vague or incomplete declarations and testimony for such information.

in yearly income from about $50,000 in 1983 to $395,000 in 1984 (according to tax returns). Husband opposed the motion and a concurrent request for attorney fees and costs, conceding his ability to pay any reasonable increase in child support but objecting, in part, that the motion was a disguised attempt to regain the spousal support which she had stipulated would end.

After a hearing at which both parties testified, the court granted the motion, increasing child support to $1,110 a month, and awarded wife attorney fees and costs fixed by a subsequent order at $5,072. Neither order recites findings, and neither party requested a statement of decision.

## DISCUSSION

Both appeals raise common issues regarding the support increase and so will be addressed in a single discussion, with husband's challenge to the fees and costs award addressed afterward. We preface both discussions by noting that the lack of express findings or a statement of decision (Code Civ. Proc., § 632) means that "all intendments favor the ruling[s] below . . . , and we must assume that the trial court made whatever findings are necessary to sustain the judgment." (*Michael U.* v. *Jamie B.* (1985) 39 Cal.3d 787, 792-793 [218 Cal.Rptr. 39, 705 P.2d 362], citations omitted.) Each implied finding must be upheld if supported by substantial evidence (*id.,* at p. 793), viewing the evidence in the light most favorable to the prevailing party and giving that party the benefit of every reasonable inference (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479]). We must accept all evidence favorable to that party as true and discard contrary evidence as lacking sufficient verity to be accepted by the trier of fact. (*In re Marriage of Okum* (1987) 195 Cal.App.3d 176, 182 [240 Cal.Rptr. 458].) The testimony of a single witness, even the party himself, may be sufficient. (*In re Marriage of Mix, supra,* at p. 614; cf. Evid. Code, § 411.)

## I

Wife attacks the child support increase as too low; husband attacks it as too high and unsupported by any showing of changed circumstances. We reject husband's arguments and agree with wife that the court abused its discretion in setting the amount below $2,000.

### Change of circumstances

To justify a modification of child support, it is usually necessary to show that there has been a material change of circumstances

since the prior order. Each case stands or falls on its own facts, and abuse of discretion is the test for reviewing a trial court's conclusion on this issue. (*In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047, 1051 [237 Cal.Rptr. 770]; *Petersen* v. *Petersen* (1972) 24 Cal.App.3d 201, 206 [100 Cal.Rptr. 822].)

The court below impliedly found a material change of circumstances; no abuse of discretion appears. As this court has observed in the context of spousal support modification, " '[i]n general a change of circumstances may be *anything* that affects the financial status of *either* party.' [Citation.]" (*In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1173 [208 Cal.Rptr. 345] (*Hoffmeister I*).) Husband relies on that part of *Hoffmeister I* that goes on to say, *again in the context of spousal support,* that an increase in the supporting spouse's ability to pay does not *alone* constitute a material change of circumstances—that there must also be a showing that the supported spouse's needs (1) have increased since the last award or, if not, (2) were not met under the prior award and continue to be unmet. (*Id.,* at pp. 1173-1175.) Husband also relies on our clarification, in the same litigation after remand, that the supported spouse's "needs must bear some relationship to the standard of living of the parties during their marriage and not the standard of living of the supporting spouse at the time of the modification hearing." (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 363 [236 Cal.Rptr. 543] (*Hoffmeister II*).) This latter rule, we will conclude, is not applicable to child support.

Husband urges that his increased earnings and improved standard of living did not constitute a material change of circumstances because there was no showing of increased needs since the original award in December 1983 and no showing that the award had not met the child's needs back then. We disagree.

First, substantial evidence supports an implied finding that Jannik's needs were not currently being met. ■ Despite the general rule requiring a showing of changed circumstances since the last prior order, a court may base its modification on a showing of *current* needs alone where, as here, the prior order called for modification based on a stipulation unaccompanied by findings about any change of circumstances existing then. (*In re Marriage of Thomas* (1981) 120 Cal.App.3d 33, 34-35 [173 Cal.Rptr. 844]; *Singer* v. *Singer* (1970) 7 Cal.App.3d 807, 812-813 [87 Cal.Rptr. 42].) ■ "The stipulation of the parties, unless it is tantamount to an agreed statement of facts on which the portion of the decree relating to custody, maintenance and education of the children is based, does not divest the court of authority to modify child support. [Citation.] Any proper modification of the decree, may, in consideration of the best interest and welfare of the children [cita-

tion], be ordered on application of the mother, despite her previous agreement limiting the father's obligation for support. [Citations.]" (*Singer* v. *Singer, supra,* 7 Cal.App.3d at p. 812.)

 Uncontradicted testimony from wife shows that although there was no increase in Jannik's *expenses* since the last order in April 1985, the $475 monthly child support that she had been receiving (without adjustment since the first award in 1983) was not enough to meet the child's needs, and she had always had to use part of her spousal support to make up the shortfall. The stipulation underlying the April 1985 order is silent on this point, and nothing in the record shows a contrary determination, agreed or evidentiary, attending the 1983 award. Husband cites his declaration testimony that there was no discussion or understanding, in negotiations leading to the 1985 stipulated amendment, that wife would use spousal support to cover Jannik's expenses. Wife had declared, to the contrary, that there *was* such an agreement and that the entire increase was allocated to spousal support so that husband could gain the tax advantage of having it so allocated (see *In re Marriage of Ames* (1976) 59 Cal.App.3d 234, 239, fn. 6 [130 Cal.Rptr. 435]). However, this issue of how the increase was allocated, or why, is immaterial. Even if there was no agreement one way or the other (husband's claim), wife's testimony remains uncontradicted that she *in fact* had to rely on spousal support to meet Jannik's needs. It is also unimportant that husband, according to his testimony, disputed that there were changed circumstances while negotiating the prior modification. The stipulation does not state that, and there are no express findings.

The record is silent as to Jannik's needs at the time of the original 1983 award (see fn. 1, *ante*). Husband points to facts about wife's total income and expenses as indicating that wife is better off now than in 1983 and, thus, that there was no change of circumstances. However, inquiring into wife's *total* income and expense figures for 1983 is beside the point. What concerns us is whether *$475 in monthly child support* was enough to meet *Jannik's* expenses over the years, not whether overall income and expenses balanced out. Moreover, husband reads too much into the record on wife's 1983 financial status.[2]

---

[2] He asserts, for example, that wife was not receiving any income in 1983 from the $80,000 in community property that she had been awarded. What he chiefly relies on is a narrative summary in wife's hearing brief (whose contents wife adopted as true in testimony) that gives some income and expense figures for 1983 but is *silent* as to income from the $80,000. This is too vague, however, because the narrative summary does not purport to be all-inclusive. Husband tries to read a similar ambiguity-by-silence into wife's declaration in support of the modification. However, that declaration speaks to changed circumstances since *the 1985 order*—not the original award. It recites that she received the $80,000, invested it (at some undisclosed time) and, *at the time of the 1985 order,* was earning $640 in monthly dividends whereas the income later fell to about half of that figure due to a combination of lower inter-

The only evidence showing an allocation of expenses between mother and son is the income and expense declaration that wife filed for this latest modification. It was impeached in a minor item but nevertheless shows overwhelmingly that wife's disposable income plus $475 is inadequate to cover Jannik's legitimate share of expenses.

We uphold the court's implied finding that Jannik's needs were not being met and, also, that husband's increased earnings amounted to a material change of circumstances.

■ We reject husband's reliance on the *Hoffmeister* cases and conclude that the rule of *Hoffmeister II* tying needs to the standard of living enjoyed during marriage has no place in child support as opposed to spousal support determinations. Adults who separate and dissolve their marriage do so with eyes open, each choosing a separate course and appreciating the possibility that the other will go on to attain a far more comfortable standard of living. Limiting increases in spousal support to the supported spouse's living standards during marriage justifiably holds the supported spouse to those expectations. The child, on the other hand, is an innocent victim of the dissolution, with no choice in the breakup but with reason to expect that both parents will continue to provide for him or her in whatever manner they can in life. Limiting increases in child support to the living standards enjoyed before the marriage ended would defeat that expectation for no good reason.

■ Husband contends that wife's loss of spousal support could not be deemed either a material change of circumstances or a part of increased needs because wife, by stipulating away all right to further support and then asserting the loss as a reason for increasing child support, is in effect reneging on her agreement. However, this argument has only superficial appeal— first, because it appears that wife did try to honor her stipulation, but more importantly, because the law tolerates any incidental benefit conferred on a custodial parent in this situation.

On the first point, although wife cited the loss of spousal support as a change of circumstance, she did not ask the court to restore the entire amount. Spousal support had been $2,650; she asked only for an increase of $1,525 over the existing level of child support. In explaining the allocation of expenses between Jannik and herself, she disclaimed any intention of trying to recoup the deficit on her side of the expense figures. She asked only for the deficit on Jannik's side.

---

est rates and depletion of capital. This does not establish, as husband maintains, that wife received no income on the capital "until March of 1985." The passage does not address *1983* income.

■ On the second point, the law puts the child's interests before the contractual expectations of the parents. Courts will not respect agreements that have the effect of contracting away the child's right to support. (*In re Marriage of Utigard* (1981) 126 Cal.App.3d 133, 142-143 [178 Cal.Rptr. 546], and cases cited; *Singer* v. *Singer, supra,* 7 Cal.App.3d 807, 812.) This principle is so well established that no parent should expect that a termination of amounts designated spousal support but in fact needed to augment an insufficient child support award insures against an upward modification of child support after the spousal support ends. Husband in this case, an attorney who has represented himself throughout most of these proceedings, is especially chargeable with that knowledge.

■ The law also mandates that child support be set and modified with the living standards of *both* parents in mind—at a level beyond the bare necessities of life if possible. A child's "need" for more than the bare necessities thus varies with the parents' circumstances. (*Singer* v. *Singer, supra,* 7 Cal.App.3d 807, 813; *In re Marriage of Hanchett* (1988) 199 Cal.App.3d 937, 943 [245 Cal.Rptr. 255]; *White* v. *Marciano* (1987) 190 Cal.App.3d 1026, 1031-1032 [235 Cal.Rptr. 779]; Civ. Code, §§ 4720, subd. (e), 4724, subd. (a).)

Accordingly, where the supporting parent enjoys a lifestyle that far exceeds that of the custodial parent, child support must to some degree reflect the more opulent lifestyle even though this may, as a practical matter, produce a benefit for the custodial parent. That was the situation in *In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869 [165 Cal.Rptr. 389], where an order for $3,600 monthly child support for four children was upheld, in light of the supporting father's monthly after-tax income of about $22,500 and despite a practical inability to distinguish between the children's and the mother's lifestyles. (*Id.,* at pp. 873, 876-877.) Another case on point is *White* v. *Marciano, supra,* 190 Cal.App.3d 1026, where a father with gross yearly income of about $1 million was ordered to pay $1,500 a month (pendente lite in a paternity action) for a baby living in a modest apartment with a mother who made only $14,000 a year. (*Id.,* at pp. 1029-1030, 1033.) There was no abuse of discretion even though the award " 'undoubtedly [would] allow [the mother] to substantially improve her own economic status, in that it should cover more than the direct out-of-pocket expenses incurred on behalf of the minor.' " (*Id.,* at p. 1034.)

For the foregoing reasons, we find support for the court's implied finding of changed circumstances.[3]

---

[3] We need not decide whether, in light of a child's right to have support based on *both* parents' lifestyles, a dramatic rise in the supporting parent's income is enough alone to warrant a

*Amount of award*

█ The amount of child support rests in the discretion of the trial court and cannot be overturned unless a clear abuse is shown. An appellate court does not substitute its own judgment; rather, it interferes only if no judge could reasonably have made the order under the circumstances. (*White* v. *Marciano, supra,* 190 Cal.App.3d 1026, 1033; *In re Marriage of Aylesworth, supra,* 106 Cal.App.3d 869, 876.)

Husband removed the issue of his ability to pay by stipulating that he could afford any reasonable increase. The trial court therefore must have found that wife's estimated expenses for Jannik exceeded what she was able to provide for him by only $1,110 a month, rather than the $2,000 she sought. It was undisputed that wife's total monthly gross income (excluding child support and including $298 in interest on capital assets of $65,000) was $1,978 and that expenses for herself totaled at least $2,081.50, leaving a considerable after-tax shortfall on her side of the expenses alone. As previously mentioned, wife did not ask for the difference on *her* side.

Downwardly adjusted to reflect an error in the expense and income declaration, wife's estimated monthly expenses for Jannik were $2,106.50, which of course exceeded the requested $2,000. The issue thus is whether substantial evidence supports the court's necessary conclusion that these claimed actual expenses were unjustifiably inflated by about $900 and whether the court abused its discretion in impliedly finding that husband's concededly high standard of living and ability to pay did not overcome any inflation of the claimed expenses.

Wife broke down Jannik's monthly expenses as follows: residence, including mortgage, taxes and insurance ($714); food and household supplies ($350); utilities and phone ($107.50); laundry and cleaning ($25); cash and credit card payments toward clothing ($250); medical and dental ($150); child care ($200); education ($60); entertainment ($150); auto and other transportation ($75); incidentals ($25).

Husband disputed only some of the items. Foremost, he questioned wife's 50/50 split of all residence expenses between herself and the boy, of which Jannik's claimed share was $714. Absent that allocation, wife would have to invade her capital or sell the home. It would cost her between $700 and $800 a month to rent an apartment in Santa Rosa and, in such event, Jannik would have to give up his home, his horse and four dogs.

---

modification. (Cf. *Hoffmeister II, supra,* 191 Cal.App.3d 351, 363.) There was also an inadequate prior award here.

Husband also challenged the $250 claimed for Jannik's clothing. However, in light of wife's explanation of the type of clothing and place of purchase, we find husband's sole evidence on this point—that the boy always came to visit dressed in the same outfit—insubstantial. On medical expenses, husband challenged monthly costs of $100 spent on counseling sessions for Jannik. Wife testified that irregular visitation by husband had caused Jannik some insecurity and thus the need for counseling, but husband pointed to a provision in the 1983 decree that any future therapy was subject to approval by the same court-appointed psychologist who had determined in 1983 that therapy was not needed. On this record, which includes husband's testimony that the boy was getting high grades and reportedly getting along well in school, the court was entitled to enforce the provision. That is true notwithstanding the fact, noted by wife, that the court found the three-year-old opinion on the need for therapy to be irrelevant to current needs. The point was that the current therapy was in violation of the order, whether needed now or not.

Husband did not attempt to impeach wife's expenses for food and supplies, utilities and phone, laundry and cleaning, child care, education, entertainment, transportation and auto, or incidentals.

Giving due deference to the trial court's ruling, we subtract the disputed medical expense ($100). That reduces wife's claimed actual needs by only *$100.*

Husband urged that wife should have been working full-time and that additional income should be imputed to her. He produced a career development consultant's report showing that wife could secure full-time employment where she worked or at other Santa Rosa hospitals. However, no salary levels were given. The only salary evidence is from wife, who testified that at the hospital where she worked the hourly pay differential between her nighttime, on-call job ($15.65) and a full-time job ($12.50) would mean a net increase of only $200 a month. Also, by working nights, wife was able to have someone sleep over at the house for $10 a night and then sleep herself after he was off to school the next day. While there is no evidence on this point, common sense says that the extra $200 a month in earnings would be offset in large part by increased child care costs. Moreover, by working night shifts an average of three nights a week, commencing at 11 p.m., wife is enabled to be a full-time parent Monday through Friday, thereby, among other duties, accommodating Jannik's transportation needs (school plus after-school activities that include baseball, soccer and basketball, having friends over once or twice a week, roller skating, bowling and swimming lessons).

■ More importantly, a court will not base an award on earning capacity as opposed to actual earnings unless the parent appears to be avoiding his or her responsibilities *and* it would be in the child's best interests to impute the difference in earnings (*In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 973 [236 Cal.Rptr. 706]; *In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 427 [149 Cal.Rptr. 616]; cf. *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408])—conclusions that this record cannot support.

■ The only other basis for reducing wife's claimed expenses would be husband's argument that wife used some of her capital unnecessarily and thus should not be allowed to complain of the lost interest income. That argument is untenable on this record, however, because we do not know how much of wife's lost income is due to decreased capital, how much is due to declining interest rates or how much is due to use of that capital for child support. In other words, we cannot tell how much more she would be making had she kept the full sum invested. (At the time of the hearing she had about $55,000 in a certificate of deposit and another $6,000 to $7,000 in a money market account.) Moreover, she had undisputedly been using about $2,000 of it for ordinary living expenses for herself and the child by the time of the hearing and was expecting to use about $1,800 more for the month of February. Also, part of her prior withdrawals had been to pay attorney fees from the prior modification and taxes on alimony. Her only questionable withdrawals were opening an individual retirement account ($2,000) and buying a used truck ($5,500) rather than making expensive, needed repairs to the 1980 Mercedes-Benz station wagon (not then running) that she had received in the community property division.

Even subtracting a generous $50 for interest income lost due to questionable capital depletion only raises the total disallowance to $150, reducing wife's claim to $1,956.50. There is no substantial evidence to support any further disallowance, and the trial court's order awarding monthly child support in an amount over $750 *less* than the remaining needs is for that reason an abuse of discretion.

That is not the end of the inquiry, however, for there is further abuse. The court also had to take into account, beyond the actual expenses shown, husband's conceded wealth. (*White* v. *Marciano, supra,* 190 Cal.App.3d 1026, 1032; *In re Marriage of Ames, supra,* 59 Cal.App.3d 234, 238-239.) The evidence of his lifestyle is incomplete but shows that he has numerous automobiles, including a Rolls Royce, and at least two residences. He had previously sent a chauffeured car to pick up Jannik for visitation.

The evidence shows that wife had been invading capital, that she and the child had seen a decline in lifestyle since the marriage (e.g., no vacations or

private school) and that the house might have to be sold if child support does not at least meet the claimed level of expenses. We realize that to allow wife in this situation to keep the Santa Rosa house, after her own right to support has ended, means allowing her a lifestyle that she could not maintain on her own. However, our focus is on Jannik. Given husband's income of nearly $400,000 a year, it would be an abuse of discretion not to award something beyond actual expenses.

■■■ Under these circumstances, we hold that the only tolerable award would be the full $2,000 that wife requested. Anything less would ignore the tremendous disparity between Jannik's lifestyle and that of his father. On the facts of this case, that amount will do no more than help preserve the lifestyle to which Jannik is accustomed. As noted in *Singer* v. *Singer, supra,* 7 Cal.App.3d 807, children are entitled to be supported in a style and condition consonant with their parents' position in society. (*Id.,* at p. 813.) Here, as in *Singer,* we have a father who has stipulated to his ability to pay any reasonable amount of increase, and he "*can hardly object to an allowance that does not exceed the amount demanded in the pleadings and which the evidence . . . shows will be legitimately devoted to the best interests of his [child].*" (*Ibid.,* italics added.) As *Singer* also notes, "The law is well established that 'The father's duty to support the children *does not end with furnishing the mere necessities of life if he is able to afford more. . . .*' [Citations.]" (*Ibid.,* italics added.)

The Santa Rosa house has been Jannik's home (at first a summer home) all his life. Even with $2,000, wife may still have to invade capital in order to maintain the house, which could lead in turn to less interest income and eventually the possibility of having to sell the house. These are factors that favor using the tremendous disparity between husband's and wife's incomes to increase the award to a level beyond proven expenses. The amount in dispute is de minimis compared with his gross monthly income of over $32,000. A computation submitted by wife at the hearing, taken from child support guidelines used by several trial courts in California, showed that an appropriate child support award based on the parties' relative incomes would be $3,116 a month. The trial court certainly had discretion to award something less than that amount, but it reinforces our conclusion that an award of anything less than the $2,000 requested by wife was an abuse of discretion.

II*

. . . . . . . . . . . . . . . . . . . . .

* See footnote, *ante,* page 543.

## DISPOSITION

That part of the order setting monthly child support at $1,110 is reversed, and the superior court is directed to enter a new order granting support in the pleaded amount of $2,000 a month, effective January 1, 1987. The order is otherwise affirmed, and so is the later order fixing the amount of fees and costs awarded to wife. Costs on both the appeal and the cross-appeal shall be borne by husband (Cal. Rules of Court, rule 26).

Kline, P. J., and Benson, J., concurred.