Filed 9/30/22  County of San Diego v. D.L. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| COUNTY OF SAN DIEGO, | D079204 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. DF215239) |
| D.L., | |
| Defendant and Appellant; | |
| S.H., | |
| Objector and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Terrie E. Roberts, Judge.  Affirmed.

D.L., in pro. per., for Defendant and Respondent.

No appearance for Plaintiff and Respondent.

No appearance for Respondent S.H.

D.L. (Father) appeals a June 2021 order modifying a joint physical custody arrangement to grant him supervised visitation with his teenage daughter solely on alternating Saturday afternoons. Concluding that Father's various contentions do not show an abuse of the family court's broad discretion, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Father and S.H. (Mother) are parents to A.L. (Daughter), who was born in 2007. In 2009, the County of San Diego commenced this action against Father seeking to establish his paternity and collect child support. Pursuant to Family Code section 17404, subdivisions (e)(1) and (e)(4), once the support order was entered Mother became a party to the action for purposes of support, custody, and visitation.[2]

---

[1] Father submitted a deficient record on appeal that would ordinarily have led us to reject most of his claims. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) Independently concerned about appealability, we requested the entire superior court file. Having concluded the June 2021 custody order is appealable, we now augment the record on our own motion to consider the merits of Father's claims. (See Cal. Rules of Court, rule 8.155(a)(1)(A).) The following documents in the superior court file are now part of the record on appeal: (1) the Findings and Order after Hearing (FOAH) filed on August 10, 2010 setting an initial custody order; (2) Father's request for order (RFO) filed August 1, 2016 seeking to modify custody; (3) the FOAH filed on February 14, 2017; (4) Father's RFO filed March 3, 2020 seeking to modify custody; (5) Father's filed October 19, 2020 request to deem requests for admission 1 through 17 admitted; (6) Family Court Services (FCS) reports filed June 19, 2020 and March 19, 2021; (7) the Amended FOAH filed on June 11, 2021; (8) family court minutes dated January 7, 2022 correcting a mistake in the June 11, 2021 order; and (9) the amended FOAH filed on January 7, 2022.

[2] Unless otherwise designated, further statutory references are to the Family Code.

2

In August 2010, following a hearing at which only Mother attended, the court awarded joint legal custody to both parents, primary physical custody to Mother, and supervised visitation to Father on alternating weekends and Wednesday evenings. In August 2016, Father filed an RFO seeking to modify the custody and visitation arrangement. He proposed that Daughter stay with him every Sunday through Tuesday, and stay with Mother the remaining four days of the week. Following a contested hearing at which both parties appeared, the court granted Father's request in February 2017.

In March 2020, Father filed an RFO seeking to modify the 2017 order, claiming that Mother had frustrated his visitation rights. In conjunction with this filing, he served Mother with various requests for admission (RFAs) addressing custody and visitation issues.[3]

Following mediation, FCS prepared a report in June 2020 recommending that Father have unsupervised visitation with then-13-year-old Daughter on alternate weekends from 4:00 p.m. on Saturday until drop off at school on Monday as well as each Wednesday after school until 8:00 p.m. The report discussed the parents' conflicting accounts as to an incident in which Father allegedly hit Daughter. The mediator did not believe Father's account that he hit Daughter intending to discipline her, "as the incidences [*sic*] he described seemed very tense and heated." She further indicated that although Father accused Mother of failing to follow the parenting plan, he admitted to several instances in which he failed to follow

---

[3]     The requests asked Mother to admit that she had frustrated Father's visitation (RFAs 1-3, 8, 10-12); could not properly take care of Daughter and used marijuana and alcohol around her (RFAs 6, 7, 9, 13); had tried twice to run over Father with her car (RFA 5); lied to mediators about Father to strip him of his parental rights (RFA 16, 17); believed Father should have sole legal and physical custody over Daughter (RFAs 4, 14); and agreed to Father's proposed parenting plan (RFA 15).

the plan himself. He had been late for visits, showed up at daycare outside his scheduled time, refused to return Daughter as required, and took Daughter out of state without informing Mother.

At the court's request, an FCS counselor interviewed Daughter in March 2021 and prepared a supplemental report. Daughter described her relationship with Father as " 'awkward' " and " 'complicated.' " He was quick to anger when she used her phone or texted Mother. He made her get up at 6:00 a.m. during visits and poured water on her head if she failed to get up. Some of their visits were spent traveling in his semi-truck; on a recent birthday, she had to shower at a truck stop after Father refused to drop her off or let her call Mother. Father made her feel uncomfortable when he discussed sex with her using crude terms. Reflecting on Daughter's account, the counselor expressed concern that Father was attempting to control Daughter, verbally abuse her, and physically humiliate her. The counselor believed that the "previously reported domestic violence dynamic between the parents is being carried over into the father's relationship with the child." Given Daughter's report, the counselor recommended "no overnight contact" and unsupervised visitation every Saturday and Sunday between 4:00 p.m. and 8:00 p.m.

Meanwhile in October 2020 Father filed a motion asking the court to deem admitted 17 RFAs served on Mother, claiming she had failed to properly respond. With both motions pending, the court set an evidentiary hearing for May 14, 2021.

4

At the May 14 evidentiary hearing, Mother and Father each examined three witnesses.[4]  Father's mother (the child's paternal grandmother) testified without hearsay objection that Father had complained about being denied visitation.  Father's twin brother testified that Father had asked him for assistance in trying to contact Mother to arrange visits with Daughter.  Another brother testified that there were no concerns leaving Daughter in Father's care.

Mother examined her boss, who recalled once seeing Mother call the police in distress, unsure where Daughter was and exclaiming that she could no longer track her because her phone had been thrown out the window along an interstate highway.[5]  Another witness testified that in April 2019, she observed Daughter looking unhappy and reluctant to see Father before a visit.  Mother then examined her mother (Daughter's maternal grandmother), who voiced concerns about leaving Daughter in Father's care.  The grandmother recalled a time in April 2020 when Daughter returned upset from an out-of-state trip after Father made her cut off her braids.  Father spoke with Daughter about prostitution, smacked her in the face, and thrown water on her telling her she smelled.

In his closing argument, Father noted that public policy favored continuing contact with both parents.  He believed it would serve Daughter's best interests to be primarily in his physical custody, with Mother having

[4]     When the hearing began, the court indicated that Father had nine witnesses on his witness list while Mother listed six.  Citing Evidence Code section 352, the court limited each side to three witnesses.

[5]     The court deemed this evidence admissible under the excited utterance exception to the hearsay rule.

visitation on alternate weekends.  He also asked for certain RFAs to be deemed admitted based on Mother's failure to respond.

The court interjected to address the discovery issue.  Following some discussion, it concluded that Mother's responses to Father's RFAs were defective in form and deemed them admitted.[6]

Mother delivered her closing.  Citing her daughter's statement to the FCS counselor that she did not want overnight visits with Father, she urged the court to focus on Daughter's safety in making a visitation order.  Mother wanted Father to be denied visitation altogether, but felt that any visits should be supervised if they were to occur.

Summarizing the evidence after the parties concluded their arguments, the court noted that the 2020 FCS report indicated that Father had slapped Daughter, and nevertheless recommended visitation with Father on alternating weekends from 4:00 p.m. on Saturday to 8:00 a.m. on Monday.  The supplemental FCS report filed in 2021 stated that Father failed to drop Daughter off during her birthday or let her use her cell phone.  Daughter reported that some visits were positive while others were not.  Overall, she felt Father only cared about his own feelings and was not mindful of her own.  She described her visits with Father as awkward.

Noting the overarching policy guiding child custody and visitation orders was to ensure the health, safety, and welfare of the child, the court expressed that section 3020, subdivision (b) recommended frequent contact with both parents *unless* such contact would not serve the child's best interests.  Factors affecting a child's best interests were described in section

---

[6]    To avoid repetition, we discuss the discovery issue in section B.3 of our discussion.

3011, including the child's relationship with both parents, any history of abuse, and the health, safety, and welfare of the child.

Viewing the record, the court had safety concerns with unsupervised visitation because Father had kept Daughter beyond his visit time, prevented her from contacting Mother, made her shower at a truck stop, slapped her, and threw water on her face. It required *supervised* visits for at least 90 days under section 3200.5, subdivision (b): Father could visit from 12:00 p.m. to 4:00 p.m. on alternate Saturdays beginning June 5, 2021. To evaluate whether visitation should remain supervised beyond the 90 day period, the court set a review hearing on September 8.

The court directed the family law facilitator to prepare an order. We construe Father's premature appeal from the May 14, 2021 hearing as being taken from the subsequent FOAH entered in June 2021 and amended in January 2022. (Cal. Rules of Court, rule 8.104(d); see *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1170.)

## DISCUSSION

Demonstrating obvious frustration with the family court's June 2021 custody order, Father raises a host of contentions on appeal. We address these in turn following a brief discussion on appealability. As we explain, Father fails to demonstrate that the family court abused its discretion in modifying his custody and visitation. His claims largely amount to an attempt to reweigh the evidence and suggest without basis that the trial judge was biased against him. Because the record amply supports the court's ruling, we affirm.

7

A.     *Appealability and Mootness*[7]

As a threshold matter, we must consider whether the June 2021 order on custody and visitation is appealable.  "The existence of an appealable judgment is a jurisdictional prerequisite to an appeal.  A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)  The right to appeal is "strictly statutory."  (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377 (*Enrique M.*).)  Because the Family Code contains no statutory provisions governing appeals from child custody orders, "the right to appeal a child custody determination is generally limited to final judgments and orders made after final judgments" under Code of Civil Procedure section 904.1, subdivisions (a)(1) and (a)(2).  (*Enrique M.*, at p. 1377.)

On its face, the June 2021 order applies for only three months, at which point the court set a review hearing to determine whether visits should remain supervised.  Temporary orders are not appealable under Code of Civil Procedure section 904.1, subdivision (a)(1).  (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 559–560 (*Lester*).)  For the June 2021 order to be appealable as a postjudgment order under section 904.1, subdivision (a)(2) of the Code of

---

[7]     The court invited letter briefs from the parties on August 15, 2022, requesting them to submit a copy of any prior final judgment on custody and visitation preceding the June 2021 FOAH.  Seeking to establish whether we had jurisdiction, we also requested the entire superior court case file and augmented the record with prior custody orders entered in 2010 and 2017. (See footnote 1, *ante.*)

Civil Procedure, it must have followed a prior final judgment on custody and visitation.[8]

A custody and visitation order was entered in February 2017 following a contested hearing where both parties appeared. The detailed order adopted the FCS mediator's recommendations that Father have physical custody of Daughter Sunday through Tuesday, while Mother would have physical custody Wednesday through Saturday. It laid out a parenting schedule during the school year and holidays; means of communication, notifications, and handoffs; and restrictions on parental behavior (such as substance abuse and negative comments about the other parent).

We conclude the 2017 FOAH reflects a final judgment on custody and visitation. (*Enrique M., supra,* 121 Cal.App.4th at p. 1378 [prior custody order adopting the parties' partial agreement and FCS recommendations after a contested hearing amounted to a final judgment on custody and visitation]; see *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1089, fn. 2 [prior custody order entered after a contested hearing reflected a final judicial custody determination]; *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955−956 (*Brown & Yana*) [where parents cannot agree on a custody arrangement, the court sets the matter for an adversarial hearing and enters

---

8    The June 2021 order cannot be challenged as an order following a final judgment on paternity or child support on the County's complaint because the paternity and support judgment statutorily could not address matters of custody or visitation. (§ 17404, subd. (a); see *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651−652 [an appealable postjudgment order must either affect the judgment or relate to its enforcement].) Mother became a party to the County's action for purposes of determining child support, custody, and visitation under section 17404, subdivision (e) only after the child support and paternity judgment.

a final or permanent custody order that serves the best interests of the child].)

Supporting this conclusion are cases addressing whether the "best interests" standard or " 'changed circumstance' " test applied to a family court determination. Where a prior custody order reflects a final judgment based on the best interests of the child, a parent must demonstrate changed circumstances in seeking to modify it. (See *Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996.)[9] In *Catherine D. v. Dennis B.* (1990) 220 Cal.App.3d 922 (*Catherine D.*), prior custody orders that were either based on stipulations or addressed limited matters such as how the parents would notify each other before visits or make joint decisions on medical care and school programs did not reflect a prior final judgment on custody and visitation. (*Id.* at pp. 929−930.) Similarly, in *Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1050, a custody order issued as part of a domestic violence proceeding was not a permanent custody determination.

Unlike the narrow prior orders in *Catherine D.* and *Keith R.*, the 2017 FOAH was issued after a contested hearing and reflected recommendations of the FCS mediator. By increasing Father's parenting time from supervised visits on Wednesdays and alternating weekends (as reflected in the 2010 order) to unsupervised time three days every week after a contested hearing,

---

9       The changed circumstance rule serves the dual goals of judicial economy and protecting stable custody arrangements. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256 (*Montenegro*).) " 'It provides, in essence, that once it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine the question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest." (*Ibid.*) Changed circumstances not required for a mere change in visitation not amounting to a change in physical custody. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077.)

the court reached a parenting plan that it believed would serve Daughter's ongoing best interests. Although not expressly captioned as such, the 2017 order reflects a final judicial custody determination, and the subsequent modification order is appealable as a postjudgment order. (*Enrique M., supra,* 121 Cal.App.4th at p. 1378.)[10]

The June 2021 order established custody and visitation for only a three month period and set a review hearing in September 2021 to determine whether Father's visits should remain supervised. Although this three month period is now over, it appears from the court's minutes from a January 7, 2022 hearing that the court did not change the custody or visitation arrangement following the review period because no visits took place in that three-month interval. Because the June 2021 custody and visitation order remains in effect, Father's appeal is not moot. (See *Lester, supra,* 84 Cal.App.4th at p. 566 ["A question becomes moot when, pending an appeal from a judgment of a trial court, events transpire which prevent the appellate court from granting any effectual relief."].)

---

10    Because it was final, changed circumstances were required to modify the 2017 custody order. A finding of changed circumstances may be express or implied. (See, e.g., *In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 551 [substantial evidence supported implied finding of changed circumstances].) Here, the FCS counselor's concerns for Daughter's safety and emotional wellbeing as reflected in the 2021 supplemental report and credited by the trial judge amply support an implied finding of changed circumstances. Father does not suggest otherwise.

B.      *Merits*

Turning to the merits of this appeal, Father faults the family court with everything from ignoring relevant evidence or statutes to being biased against him on account of his gender.  As he sees it, the evidence was uncontested that Mother violated prior court orders in denying him visitation.  Had the court excluded Mother's witnesses on account of her alleged failure to serve Father with her witness list, the only evidence before the court would have been Father's uncontested petition and the RFAs, which the court deemed admitted.  And on this narrower record, Father suggests, reversal would be compelled.  Although Father's contentions plainly reflect his dissatisfaction with the family court's ruling, they do not establish reversible error.

1.      *Standard of Review*

We review custody and visitation orders under the deferential abuse of discretion test, evaluating whether the court reasonably could have found that its order advanced the best interests of the child.  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*).)  "Under this test, we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Montenegro, supra,* 26 Cal.4th at p. 255.)  "A court abuses its discretion in making a child custody order if there is no reasonable basis on which it could conclude that its decision advanced the best interests of the child.  [Citation.]  A court also abuses its discretion if it applies improper criteria or makes incorrect legal assumptions." (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497, italic omitted.)  We accept factual findings made by the family court that are supported by substantial evidence.  (*Catherine D., supra,* 220 Cal.App.3d at

p. 931.) It is the role of the family court, not the appellate court, to consider the credibility and weight of the evidence. (*Ibid.*)

### 2. *Father's Attempts to Reweigh the Evidence Fail.*

Although Father purports to claim that the family court misapplied relevant criteria or considered irrelevant evidence, he in fact seeks to recast the evidence in the light most favorable *to him* in arguing that a different result was compelled. For example, Father faults the court for not considering Mother's past domestic violence against him in weighing the best interest factors under section 3011 and suggests the court erred by not applying the section 3044 presumption.[11] He likewise asserts the court violated his constitutional rights and ignored the statutory preference in section 3020 for children to maintain contact with both parents.[12] Father believes the court should not have relied on statements made by Daughter to the FCS counselor and should have considered the entire case history since 2017. He faults the court for accepting Mother's claim that she served him with her witness list.

As a rule, "[t]he policy of Family Code section 3020 in favor of 'frequent and continuous contact' does not . . . constrain the trial court's broad

---

[11] "When determining the best interest of the child, relevant factors [under section 3011] include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents." (*Montenegro, supra,* 26 Cal.4th at p. 255.) Where there has been a finding that a party seeking custody has perpetrated domestic violence against the other party seeking custody within the last five years, section 3044, subdivision (a) places a rebuttable presumption that an award of sole or joint legal custody to the perpetrator would be detrimental to the best interests of the child.

13

discretion to determine, in light of *all* the circumstances, what custody arrangement serves the 'best interest' of minor children." (*Burgess, supra,* 13 Cal.4th at p. 34; see also § 3020, subd. (c).) Here, the court expressly referenced sections 3011 and 3020 and ultimately concluded that narrower visitation on a supervised basis would serve Daughter's best interests at least for the immediate three month term. It had no occasion to apply the domestic violence presumption, having excluded an 11-year-old restraining order on relevancy grounds.[13] During the hearing, Father presented witness accounts and admissions to support his claim that Mother had frustrated his visitation with Daughter. There is no indication the court ignored Father's evidence in making its ruling.

Crediting information in the two FCS reports, the court reasonably found that it would serve Daughter's best interests for Father to have limited, supervised visitation. Ample substantial evidence supports the court's findings that Father had failed to follow the parenting plan, prevented

[12] Section 3020 lays out legislative findings and public policy underlying custody determinations. A child's "health, safety, and welfare of children shall be the court's primary concern" in determining his or her best interests. (§ 3020, subd. (a).) Although "it is the public policy of this state to ensure that children have frequent and continuing contact with both parents," that preference must yield where contact does not serve the best interests of the child. (§ 3020, subds. (b), (c).)

[13] At the start of the evidentiary hearing, the court excluded on relevancy grounds testimony pertaining to "a restraining order from a few years back" involving Father's allegations that Mother tried to run him over with her car, deeming it irrelevant to the custody issues presented. Although Father claims the court overlooked evidence of domestic violence, he does not argue its evidentiary ruling was an abuse of discretion. Nor could he. The only prior finding of domestic violence reflected in our record is a January 2010 restraining order entered against Mother. As to this evidence, the five year domestic violence presumption under section 3044 would not apply.

Daughter from contacting Mother, slapped her, and poured water on her, warranting that his visitation be supervised. That the court found the FCS reports more persuasive than Father's witnesses does not suggest error.

3. *There Was No Basis to Deem the RFAs Admitted, Meaning the Failure to Consider them Was Harmless.*

A different analysis applies to Father's claim that the court failed to consider the 17 RFAs that it deemed admitted. As we explain, although it would appear the court disregarded these admissions after deeming them admitted, there could be no prejudice where it never should have deemed them admitted in the first place.

During his closing argument, Father referenced the fact that Mother had not responded to his RFAs. The court interjected, noting that Mother had previously filed her responses with the court and was directed at the March 4, 2021 hearing to serve them on Father. Asked by the court whether she had done so, Mother said, "Yes. I did twice." The court requested clarification as to why there were "several stacks" of documents accompanying her responses. Mother replied that she had tried to answer the questions with proof. For example, rather than simply deny using drugs, she asked her employer to drug test her and attached the test results. The court stated it was satisfied that Mother responded to Father's RFAs—"she simply didn't know she only had to say 'deny' to each one. Instead of doing that, she attached documentation to show why she denied it."

Father interjected that he was never served with the responses and that even if he had been, they were defective because they did not comply with Code of Civil Procedure section 2033.210, subdivision (a) in their

15

"format."[14]  Reading that statute aloud, the court agreed that Mother's failure to separate out her responses as required by section 2033.210, subdivision (a) meant she failed to substantially comply with her duties as a responding party.  Based on this formatting error, the court believed it was "required to deem the admissions admitted."  Although the record is somewhat murky, we believe the court impliedly found that Father was served with Mother's responses.  It later explained that Mother failed to serve her responses *correctly* and that "the response *she served* is still not in substantial compliance because there's one paragraph that just says she denies all of the admissions, and you have to deny each statement."  (Italics added.)

In ruling that a formatting error under section 2033.210 defeated substantial compliance, the court erred.  Substantial compliance with section 2033.210, subdivision (a) was never the question.  Instead, the relevant question in ruling on Father's motion under section 2033.280, subdivision (c) was whether Mother substantially complied with the requirements *under section 2033.220*.  That statute in turn required her to admit, deny, or claim insufficient knowledge as to each request.[15]  As the court acknowledged,

<hr>

[14]  Further undesignated statutory references in section B.3 of the Discussion are to the Code of Civil Procedure.

Section 2033.210, subdivision (a) requires a responding party to "respond in writing under oath separately to each request."  Subdivision (b) of that statute requires each response to "answer the substance of the requested admission, or set forth an objection to the particular request."

[15]  Code of Civil Procedure section 2033.280, subdivision (b) permits a requesting party to "move for an order that . . . the truth of any matters specified in the requests be deemed admitted, as well as for a monetary sanction . . . ."  Subdivision (c) of that statute requires the court to make that order "unless it finds that the party to whom the requests for admission have been directed has served, before the hearing on the motion, a proposed

Mother's error was one of form, not of substance. Rather than deny each request for admission separately, she denied them together in one paragraph with supporting documentation. " 'Where there is compliance as to all matters of substance technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form.' " (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 779 (*St. Mary*).) Because Mother's formatting error under section 2033.210 could not statutorily negate substantial compliance with section 2033.220, the court could not deem the RFAs admitted for failures of form unless and until Father filed and litigated a separate motion to compel under section 2033.290. (See *St. Mary*, at pp. 783–784.)

As was cautioned in *St. Mary*, "[t]he RFA device is not intended to provide a windfall to litigants. Nor is the RFA procedure a 'gotcha' device in which an overly aggressive propounding party . . . may obtain a substantive victory in the case by having material issues deemed admitted." (*St. Mary, supra,* 223 Cal.App.4th at pp. 783–784.) Rather than ask Mother to admit undisputed issues to narrow triable issues (*id.* at p. 775), Father essentially invited Mother to admit that she lied to the FCS mediator, was an unfit parent, and believed Father should have custody. The family court unsurprisingly placed no weight on admissions elicited, but matters deemed admitted "are not subject to being contested through contradictory evidence." (*St. Mary,* at p. 775.) What the court should have done instead was deny the

---

response to the requests for admission that is in substantial compliance with Section 2033.220." In other words, section 2033.280, subdivision (c) requires a court to find two things to deny a motion to deem RFAs admitted: service before the motion hearing, and substantial compliance with the requirements for responses set forth in section 2033.220. In turn, section 2033.220 subdivision (b) specifies that a responding party must admit, deny, or indicate a lack of sufficient information or knowledge in each response.

motion to deem the RFAs admitted in the first place. "RFAs are not to be deemed admitted unless the party to whom RFAs are propounded fails to respond prehearing to RFAs in a manner that is substantially code compliant (§ 2033.280, subd. (c)), or he or she is recalcitrant and violates a court order compelling further responses that are deficient (§ 2033.290, subd. (e))." (*St. Mary,* at p. 784.) A different approach "undermines public policy that promotes controversies being resolved through trials on the merits." (*Ibid.*)

The trial court's error in deeming the RFAs admitted negates any claim of prejudice. Under article VI, section 13, of the California Constitution, " '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of . . . the improper admission or rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' " Father bears the burden as the appealing party to show prejudice. (*McIntyre v. The Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 674–675.) He cannot meet that burden where the RFAs should never have been deemed admitted in the first place and the family court's ruling was otherwise proper. (See, e.g., *Stafford v. People* (1956) 144 Cal.App.2d 79, 81 [procedural error by the trial court was not prejudicial where it reached the only proper outcome on the merits].)

4. *Father's Remaining Claims Miss the Mark.*

Continuing on, Father next speculates that the family court judge was biased and ruled against him solely because she was in "cahoots" with Mother as part of the "feminist movement." Nothing in our record suggests that Judge Roberts did anything except apply the relevant statutes and weigh the evidence to reach a custody arrangement she believed would serve Daughter's best interests. We will not disturb her ruling on unfounded and

18

flimsy allegations of gender bias. (See *Lester, supra,* 84 Cal.App.4th at pp. 575–576 [rejecting father's claim that trial judge demonstrated gender bias in giving him only 1/24th the parenting time that mother received in its temporary custody order]; *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 591–593 [rejecting allegations that trial judge showed gender bias in relying on cases cited in defendant's brief and making adverse credibility determinations].)

We are not persuaded by Father's procedural argument, raised for the first time on appeal, that the court was required to enter a default against Mother on account of her failure to respond *in writing* to Father's March 2020 RFO. An RFO is the family court equivalent of a noticed motion in civil litigation. (Cal. Rules of Court, rule 5.92(a)(1)(A).) A "default" occurs in civil litigation when a defendant in a civil *action* fails to answer. (Code Civ. Proc., § 585, subd. (b).) Father does not cite, and nor have we found, any authority suggesting that a failure to respond in writing to a request to change child custody or visitation results in *default*.[16] Such an outcome would make little sense in the custody and visitation context, where "[t]he court's primary concern must be the well-being of the children, not the preferences of the parties themselves." (*In re Marriage of Olson* (2015) 238 Cal.App.4th 1458, 1463 (*Olson*).)

---

[16] Rule 5.92(g) of the California Rules of Court states that parties seeking to respond to an RFO must file a responsive declaration, but it specifies no consequence for failing to respond. The local rules likewise do not suggest any repercussions for failing to respond to an RFO in writing. (Super. Ct. San Diego County, Local Rules, rules 5.5.1–5.5.5.) In civil cases, there is a *discretionary* inference that a court may draw from a party's failure to respond to a motion: "failure of the responsive party to serve and file points and authorities within the time permitted without good cause *may be considered* by the court as an admission that the motion is meritorious." (*Id.*, rule 3.2.1(C)(5), italics added.)

For similar reasons, we reject Father's suggestion that the family court overreached and interfered with his rights to parent Daughter without unwarranted supervision. In custody and visitation matters, the child's wellbeing "must take precedence over the wishes of the parents." (*Olson, supra,* 238 Cal.App.4th at p. 1464.) Although Father ostensibly sought to increase his time with Daughter in filing his RFO, "[c]hild custody proceedings usually involve fluid factual circumstances." (*Montenegro, supra,* 26 Cal.4th at p. 258.) By the time Father's motion was heard, Daughter was a teenager, and the court appropriately considered and gave due weight to her views. (Fam. Code, § 3042, subd. (a).)[17] Because *her* health, safety, and welfare were paramount, it could not only deny Father's RFO seeking more parenting time but grant Father *less* visitation and require supervision. Once changed circumstances were impliedly found, custody and visitation were reopened for adjudication. The family court then "ha[d] authority to entertain the motion to modify custody, which it evaluates with reference to the same criteria . . . that apply in an initial custody determination." (Bishay & Spear, Practice Under the Cal. Family Code (Cont.Ed.Bar 2022) § 7.60, p. 351; see Fam. Code, § 3040, subd. (d) [in making an initial custody determination, a court has "the widest discretion to choose a parenting plan that is in the best interest of the child"].)

In short, Father fails to establish a viable claim of error. The court reasonably relied on the FCS reports and Mother's witnesses to conclude that

---

[17] To the extent Father means to argue that the court could not receive hearsay reports describing Daughter's preferences, he is mistaken. Family Code section 3042, subdivision (b) required the court to "control the examination of a child witness to protect the best interest of the child." The court did not abuse its discretion in asking an FCS counselor to interview Daughter and submit a supplemental report to the court. (See *Brown & Yana, supra,* 37 Cal.4th at p. 964, fn. 11.)

supervised visitation on alternate Saturday afternoons would serve Daughter's best interests, at least for the time being.

## DISPOSITION

The order is affirmed. Father shall bear his own costs on appeal.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.

21