[No. B028472. Second Dist., Div. Seven. Oct. 27, 1988.]

In re the Marriage of URSULA A. and WILLIAM F. HUBNER.
URSULA A. HUBNER, Appellant, v.
WILLIAM F. HUBNER, Respondent.

**COUNSEL**

Lurvey & Shapiro, Judith Salkow Shapiro and Ira H. Lurvey for Appellant.

James E. Sutherland and Irving S. Feffer for Respondent.

**OPINION**

**SOVEN, J.\***—In this child support proceeding, Ursula Hubner (hereinafter Ursula or mother) appeals from a trial court order modifying child support. Respondent is William Hubner (hereinafter William or father). We reverse on grounds that the trial court failed to set a level of child support consistent with the father's ability to pay support, and the Judicial Council guidelines for discretionary child support.

* Assigned by the Chairperson of the Judicial Council.

## FACTS

William and Ursula were married in June 1975 and separated in October 1979 after a marriage of four years and three months. In March 1980, a son, Ryan, was born. In November 1980, a judgment of dissolution of marriage, incorporating a marital settlement agreement, was filed by the Orange County Superior Court.

The agreement provided that Ursula would receive spousal support totaling about $501,000 from October 1980 through April 1984, averaging $11,600 per month. The judgment also provided that pending a conclusive determination of paternity William would pay Ursula $250 monthly for child support starting October 1980. William later agreed to pay child support of $500 per month from the date of the child's birth.

In 1986, Ursula made a motion to transfer the case to Los Angeles County on grounds that Los Angeles would be a more convenient forum because William lived in Beverly Hills. Ursula continued to live in Orange County. The Orange County court denied the motion to transfer.

In June 1986, Ursula filed a statement to register the Orange County judgment in Los Angeles under Code of Civil Procedure section 1697, subdivision (b) on grounds that William resided in Los Angeles County. William filed a motion to quash the registration on grounds that although he owned residential property in Los Angeles, his primary residence was in Michigan. In December 1986, William's motion to quash the registration was denied.

In February 1987, Ursula filed an order to show cause seeking modification of the child support order and attorney's fees and costs. Ursula requested support in an "amount to be determined" in accordance with the court's guidelines, but no less than $6,000 per month." Ursula also requested attorney's fees and costs of at least $30,000.

When these proceedings were heard in April 1987, Ursula had spent the entire spousal support of $500,000, paid to her between October 1980 and April 1984, owed credit card charges of $21,000, and was unemployed. She was the child's sole caretaker, because William had no contact whatsoever with the child. She testified that she met William in 1970, when she was 19 years old and William was 36 years old. She was going to court stenography school, but stopped. She worked briefly for an airline as a gate agent in 1976. After the dissolution in 1980, Ursula did various things, "lots of telemarketing," applied for a job with other airlines, and worked in field service for a car polish company in 1983. She had a job with Mayflower Transit

Company for three months in 1987, but was fired because she "was not qualified." When these proceedings were heard, Ursula was doing some tele-marketing, and would be driving a limousine at $6 an hour starting May 1, 1987. Ursula and the minor child were living in a house in Costa Mesa which Ursula had bought after the dissolution. She declared that the house was worth $100,000, that the mortgage payment was $1,872, and that her total housing cost was $2,400 monthly.

Ursula filed an income and expense declaration showing her net disposable income to be $1,000 a month. She attached a list of expenses totalling $8,600, of which she attributed $5,760 to expenses solely for or for the benefit of the minor child. The child's expenses included $1,200 for housing (or one-half of Ursula's total housing expenses), $100 for telephone use, $300 monthly for clothing, about $550 for private school, $400 for tutoring, $1,000 for child care, and $200 for eating out.

Ursula provided the court with calculations showing that under the Judicial Council guidelines for discretionary child support, William should pay child support of $5,900.

William stipulated that he could pay any reasonable amount of child support ordered, and filed an income and expense declaration form listing as his net monthly disposable income the sum of $43,529. William claimed ordinary monthly living expenses of $21,000, exclusive of loan repayment and support obligations.

After a hearing, the trial court ordered William to pay Ursula as child support $2,215 per month, and also ordered William to pay all medical, dental and psychiatric expenses for the minor child. The court ordered William to pay as his contributive share of Ursula's attorney's fees the amount of $7,935. The court refused to order attorney's fees for the registration action on grounds that attorney's fees were specifically prohibited by the applicable code section.

The trial court issued an opinion stating its reasons for the award: "[A] child is entitled to share in the standard of living of his or her parents. . . . In the present case, however, the standard of living of the [father] and [mother] are very substantially different. The [father] has stipulated that he . . . is able to pay child support at any amount that the court deems appropriate and proper. The [mother], on the other hand, had no steady employment at the time of the hearing. . . . Her prospects for income in the future are not bright. [¶] Absent the funds she might receive from child support, her standard of living would be, at best, low moderate and at worst, minimal.

"In attempting to determine the appropriate level of child support for this child, the court is guided by the following principles. First, the child's standard of living must be based on the reasonable lifestyle of both parents. Second, it would be inappropriate for the court to make an order which was a disguised form of support for the [mother] herself as opposed to support directed merely toward the child.

"Thus under the circumstances, it is certainly appropriate for the child to attend a private school which is for the benefit of the child alone, but it may be that the child and his mother will be required to reside in a less costly residence and that may be more appropriate in terms of the reasonable lifestyle of the [mother] herself. In some ways the lifestyle of the wealthier parent must control the circumstances of the child and in some ways the lifestyle of the poorer parent must control the circumstances of the child."

The court's order of $2,215 monthly child support was "based on the court's expectation that the child will be enrolled in private school," costing, including incidental costs, about $550 per month.

The court concluded: "To the extent that any order made herein is not within the limits established by the support guidelines of the County of Los Angeles or State of California (to the extent they apply) said variation is made based upon the actual needs of the child for support."

### DISCUSSION

Ursula contends that the trial court was compelled to apply the Judicial Council guidelines for discretionary child support, abused its discretion in depriving the child of an appropriate standard of living, and erred in concluding that attorney fees could not be awarded for that portion of the proceedings related to registration of the Orange County judgment.

*Discretionary Child Support Guidelines*[1]

■ ■ ■ ■ ■ The mother's contention that the trial court was compelled to apply the Judicial Council guidelines for discretionary child support is without merit.[2]

---

[1] The Judicial Council was ordered to prepare guidelines for discretionary child support. (Civ. Code, § 4724, subd. (b).) The guidelines and the formula to calculate the amounts are found in an appendix to the California Rules of Court, Standards of Judicial Administration, Division VI. These guidelines were adopted by Los Angeles County.

[2] Ursula requested that this court take judicial notice of various matters. We consider legislative history without any such request. We do not consider the private memoranda of legis-

The guidelines for discretionary child support are a product of the Agnos Child Support Standards Act of 1984. (See Civ. Code, §§ 4720-4732.)* In enacting the Agnos Act, the Legislature found and declared that the state had "no single standard to promote equitable, adequate child support awards," and that the current method of setting child support awards "led to substantial variation in these awards among families with similar circumstances and resources." (§ 4720, subds. (a), (b).) The Legislature stated its intent that a "system of standards and procedures shall be established which provide for a uniform determination of child support awards throughout the state," to assure that "no child receives a support award less than would otherwise be established as the need for that child under the AFDC program." (§ 4720, subd. (d).)

The Legislature then specified that: "It is the intention of the Legislature that the court shall use the guidelines in use in its county to establish the child support award. However, in no event shall the court award less than the mandatory minimum child support allowable pursuant to this chapter. *In setting an award higher than the mandatory minimum, the court shall be guided by the criteria set forth in applicable statutes, relevant case law, and state and local guidelines, so long as they are not in conflict with the provisions of this chapter.*" (§ 4720, subd. (d), italics added.)

"(e) It is the intention of the Legislature that the courts shall adhere to the principles set forth in this chapter and shall depart from them only in exceptional circumstances. *A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.*" (§ 4720, subd. (e), italics added.)

Section 4724 then provides: "Upon request of either party, the court may award and, when appropriate, is hereby urged to award a higher amount of child support than the mandatory minimum child support award.

"(a) In setting a higher level of child support, *the court shall be guided by the criteria set forth in applicable statutes, relevant case law, state and local child support guidelines not in conflict with the mandatory minimum award established by this chapter, and the legislative intent that children share in their parents' standard of living* as set forth in this chapter.

"(b) The Judicial Council shall, . . . develop schedules for discretionary child support awards above the mandatory minimum child support awards. . . ." (Italics added.)

lators. (*C-Y Development Co.* v. *City of Redlands* (1982) 137 Cal.App.3d 926, 932-933 [187 Cal.Rptr. 370].)

* All section references except as noted are to the Civil Code.

Thus, the plain language of the act defeats Ursula's contention that the guidelines for discretionary awards are mandatory. The guidelines are only one of several criteria by which the court must be guided.

*Abuse of Discretion*

■ Ursula contends that the trial court abused its discretion in ordering $2,200 in child support, because the trial court awarded less than half the amount indicated by the guidelines, failed to consider the father's stipulation that he could pay any reasonable amount ordered by the court, and failed to consider the father's standard of living. We agree.

■ We recognize that "the amount of child support rests in the sound discretion of the trial court and an appellate court cannot interfere with the trial court order unless, as a matter of law, an abuse of discretion is shown. [Citations.] The power of the appellate court therefore begins and ends with the determination as to whether the trial court had *any* substantial evidence (whether or not contradicted) to support its conclusions. [Citation.] The appellate court should not substitute its own judgment for that of the trial court; it should determine only if any judge reasonably could have made such an order. [Citation.]" (*In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869, 876 [165 Cal.Rptr. 389].)

We recognize that the trial court was faced with the difficult task of reconciling the father's wealth and consequent entitlement of the minor child, with the mother's apparent poverty and need for personal support to which she was no longer entitled. ■ The trial court, however, in concluding that the child's standard of living "must be based on the reasonable lifestyle of both parents," and that a child support order should not be a disguised form of spousal support abused its discretion by depriving the child of his right to share in his father's unusual wealth.

The core of this dispute is whether the trial court, in setting child support, should focus on the noncustodial parent's wealth or the custodial parent's poverty. We conclude that the primary focus must be on the parent's wealth, and that the trial court must frame its orders to assure, as best the court can, that the wealth flows to the child, and not to the custodial parent.

First, the Legislature has made clear that a "parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life" (§ 4720, subd. (e)), and that children should "share in their parents' standard of living. . . ." (§ 4724, subd. (a).) Indeed, long before the enactment of the Family Law Act, the law was well-

established that a child had the right to "be supported in a style consonant with the position in society of its parents. . . ." (*Straub* v. *Straub* (1963) 213 Cal.App.2d 792, 798 [29 Cal.Rptr. 183]; see also *Kyne* v. *Kyne* (1945) 70 Cal.App.2d 80, 83 [160 P.2d 910].)

■ Moreover, the courts have consistently recognized that "where the supporting parent enjoys a lifestyle that far exceeds that of the custodial parent, child support must to some degree reflect the more opulent lifestyle even though this may, as a practical matter, produce a benefit for the custodial parent." (*In re Marriage of Catalano* (1988) 204 Cal.App.3d 543 [251 Cal.Rptr. 370]; see also, *Bailey* v. *Superior Court* (1932) 215 Cal. 548, 554 [11 P.2d 865]; *White* v. *Marciano* (1987) 190 Cal.App.3d 1026, 1033-1034 [235 Cal.Rptr. 779]; *In re Marriage of Aylesworth, supra,* 106 Cal.App.3d 869, 876-877.)

Second, the Judicial Council guidelines, mandated by the Legislature (§ 4724, subd. (b)), indicate that William should be paying about $5,900 monthly in child support. Neither the Agnos Child Support Standards Act nor the guidelines places an income ceiling on the applicability of the guidelines as one of the criteria by which the court must be guided (§ 4724, subd. (a)), subject always to the child's needs (§ 4700, subd. (a)).

We recognize that the Legislature referred, both to the "paren*t's* circumstances" (§ 4720, subd. (e)) and to the "paren*ts'* standard of living" (§ 4724, subd. (a), italics added). ■ We agree with the trial court that some consideration should be given to the poorer parent's circumstances or standard of living. However, at least where the ability of the noncustodial parent to pay a high level of child support is undisputed, and that level is also consistent with the guidelines, the inability of the custodial parent to make a meaningful financial contribution should not significantly affect the level of support ordered. To emphasize the contributive abilities of both parents unrealistically deprives the child of a standard of living easily available to that child, but for consideration of the poorer parent's inability to contribute. A child living with both parents, one of whom is a homemaker with no cash income, depends solely on the cash income of the earning parent.

The court was not necessarily hostage to Ursula's personal interests. The trial court was entitled to discount any portion of Ursula's requests on behalf of the minor for which no need was shown and to reject requests for amounts that would benefit chiefly Ursula, such as child care. The trial court was also entitled to consider whether Ursula's exhaustion of $500,000 in spousal support reflected either unrealistic extravagance or a limited ability as a money manager, such that the mother, rather than the child, would benefit from a generous cash award, and to make orders to limit the

mother's access to child support funds. The trial court did, in connection with medical and related expenses, order William to pay directly such expenses. The trial court has the power to order William to pay providers directly, up to fixed amounts within specified categories, for items to which the child, as the son of a wealthy man, would otherwise be entitled. The trial court was entitled to reject Ursula's stated housing needs—to remain in a house owned by Ursula—but nonetheless frame an order that would assure that the child lived in housing consistent with his father's wealth, even if the mother benefited from the use of such housing.

In summary, at least to the extent that the court can control the use of discretionary expenditures, the trial court should award child support that is reasonably consistent with the guidelines, the noncustodial parent's ability to pay, and the substantiated requests of the custodial parent on behalf of the child.

### *Attorney's Fees*

Ursula contends that the trial court abused its discretion in not awarding attorney's fees incurred in connection with registering the Orange County judgment in Los Angeles. The contention is without merit. She relies on the Family Law Act, section 4370, which authorizes an award of attorney's fees in connection with, inter alia, any modification proceeding. However, the Revised Uniform Reciprocal Enforcement of Support Act of 1968 (RURESA), Code of Civil Procedure section 1654, subdivision (b) provides: "Notwithstanding . . . any other provision of law, no party to any action under this title, . . . shall be entitled to attorney's fees from the opposing party for prosecuting or defending the action, except where the court finds that the opposing party has not prosecuted or defended the action in good faith."

Despite the clarity of Code of Civil Procedure section 1654, Ursula contends that the section was intended to apply only to routine registration actions. First, nothing in the language of Code of Civil Procedure section 1654, or in any other provision of RURESA, suggests such a limitation. Second, RURESA specifically envisions contested registration hearings. (See Code Civ. Proc., § 1699. See also *Gingold* v. *Gingold* (1984) 161 Cal.App.3d 1177, 1183-1184 [208 Cal.Rptr. 123] [registration "merely a preliminary step" but can be opposed by motion to vacate under the act].)

Finally, we note that assuming a case might arise which presented a serious conflict between Civil Code section 4370 and Code of Civil Procedure section 1654, this is not such a case: Ursula was seeking modification, not enforcement, of a child support order (compare Civ. Code, § 4370,

subd. (c)) and was authorized but not required to register the Orange County judgment in Los Angeles County (Code Civ. Proc., § 1697, subd. (b)).

Ursula's contention that the trial court erred in concluding that William defended the registration action in good faith is also without merit. The application to register the judgment in Los Angeles County was filed only after the Orange County court had denied Ursula's motion for change of venue. William was entitled to defend that the Orange County order was res judicata on the issue of residence, and, absent any authority to the contrary, that residence meant principal residence.[3]

The judgment (order modifying support) is reversed with directions. The order granting attorney's fees is affirmed.

Costs to appellant.

Lillie, P. J., and Johnson, J., concurred.

---

[3]The merits of the "registration" dispute are not before us, and we do not intend to question the trial court's conclusion. The only issue is William's alleged "bad faith."