[No. B090365. Second Dist., Div. One. Nov. 7, 1996.]

LORI McGINLEY, Plaintiff and Appellant, v.
STAN HERMAN, Defendant and Respondent.

938

**COUNSEL**

Cuneo & Hoover, J. Nicholas Cuneo and Sarah J. Hoover for Plaintiff and Appellant.

Kolodny & Anteau and William P. Glavin IV for Defendant and Respondent.

**OPINION**

MASTERSON, J.—Children are entitled to share in the standard of living of both parents. To this end a presumption exists that the amount of a child support award is determined pursuant to uniform guidelines. However, the presumption may be rebutted if one of the parents has an "extraordinarily high income." In this case, after finding that the father had an extraordinarily high income, the court awarded child support in an amount that did not relate to the father's standard of living in any meaningful way. We find this award to constitute an abuse of discretion. Accordingly, on the mother's appeal asserting that the amount of support awarded from the father was inadequate, we reverse and remand for a new support determination.

## BACKGROUND

In February 1994, Lori McGinley filed a complaint to establish that Stan Herman is the father of her child, born out of wedlock in January 1993, and for child support. In an accompanying income and expense declaration, McGinley stated that she had a monthly net disposable income of $400 and expenses of $7,627 per month. She sought support from Herman, whom she claimed to be "one of the most successful real estate agents in the entire Los Angeles area," in an unspecified amount to be established under the uniform child support guidelines.

In response, Herman admitted paternity and agreed to pay "reasonable child support based on the 18 month old minor child's reasonable needs." He declared that, as a real estate investor, he recently suffered substantial losses due to the downturn in the real estate market and the Northridge earthquake. His income and expense statement indicated an "average monthly cash flow deficit of $42,532." Herman submitted evidence, including the declaration of a certified public accountant, in support of this figure. Herman's evidence placed his "living expenses" at $31,457 a month. Herman also disputed several of McGinley's claimed expenses.

In reply, McGinley submitted the declaration of a certified public account who, based on an examination of Herman's business records, concluded that Herman's net worth was over $11 million, that his living expenses were $80,390 per month, and that he had $116,256 "cash available for support" each month.[1] Utilizing the latter figure, the accountant calculated Herman's monthly support obligation under the uniform guidelines at $14,617. McGinley requested support in this amount.

At trial, the court refused McGinley's request to have her accountant testify, stating that it was "not going to have a CPA contest here where they juggle numbers." Nonetheless, Herman stipulated that he "lives a lifestyle that is considered by some to be an extravagant lifestyle, in light of the deficits he has incurred." The court stated that it would find Herman to have an "extraordinarily high income," thus removing the support award from the uniform child support guidelines.

The only evidence taken at trial concerned McGinley's lifestyle. McGinley testified that she did not graduate from high school. She is not employed and is studying to get a real estate license. She owns a house that she rents out and lives with her child in a 600-square-foot apartment which is next to

---

[1]The declaration also offered an explanation of the differences between the two accountants' assessments of Herman's finances.

a busy highway. McGinley described the expenses she incurs for the child's preschool, swim lessons, and babysitting. She would like to live somewhere with a backyard in which the child can play.

McGinley argued to the court that, under controlling law, her child was entitled to be supported in a manner that reflected the lifestyle of his father. Herman argued that a monthly award of $1,500, with an additional $500 per month into a blocked account for college expenses, would meet the child's present actual needs, especially since he is not yet in school or involved in other activities.

In making its ruling, the trial court stated that it would be "nonsensical" to award McGinley the guidelines amount of child support based on a "casual relationship that result[ed] in the birth of a child."[2] The court stated that a support figure of $2,000 "came to mind, because we have a lot of cases like this. And that's usually been the real limits that I've seen." The court further stated that, "without a specific finding as to the exact amount, [Herman] has an extraordinarily high earning capacity and/or real income." The court also found that McGinley has a net disposable income of zero.

Based on these and other findings discussed *post*, the trial court awarded monthly child support of $1,750, with an additional $400 per month for one-half of McGinley's child care expenses, for a total of $2,150. An additional $750 per month was ordered to be deposited into a blocked interest-bearing account to pay for the child's college or postcollege education. Herman was also ordered to provide medical insurance for the child and a life insurance policy on himself naming the child as the beneficiary.

### STANDARD OF REVIEW

■ "[T]he amount of child support rests in the sound discretion of the trial court and an appellate court cannot interfere with the trial court order unless, as a matter of law, an abuse of discretion is shown. [Citations.]" (*In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869, 876 [165 Cal.Rptr. 389].) As stated in the context of spousal support, " '[s]o long as the court

---

[2]In a declaration in support of her request for child support, McGinley averred that she "dated" Herman from 1987 through the fall of 1991, and that they resumed their relationship in February 1992. When the relationship resumed, Herman suggested that they have a child, and over the next several months McGinley and Herman had sex when ovulation tests indicated that she was most fertile. In his response, Herman declared that the relationship was " 'sporadic,' " and that they never planned a " 'love child' " or had an "exclusive 'romantic' relationship." In a pleading filed at a later time, Herman objected to evidence of McGinley's account of their relationship and the circumstances surrounding the conception of the child on the ground, inter alia, that it was irrelevant inasmuch as he had admitted paternity. The court did not rule on the objection.

exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it. [Citations.]' [Citation.]" (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480 [274 Cal.Rptr. 911].)

## DISCUSSION

 McGinley contends that the trial court abused its discretion in setting an amount of child support that was inadequate.[3] We find that the trial court's discretion was not exercised along legal lines. We therefore reverse and remand for a new support determination.

### A. *Applicable Law*

This case is governed by the statewide uniform child support guidelines, which took effect in July 1992 as Civil Code section 4720 et seq., and are now set forth as Family Code section 4050 et seq. (unless otherwise specified all further section references are to the Family Code). Under these guidelines, the interests of the child are given "top priority." (§ 4053, subd. (e).) "Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." (§ 4053, subd. (f).) The guidelines set forth a complex formula for determining child support based on the circumstances of the parents and child. (§ 4055.) The support amount rendered under the guidelines formula "is intended to be presumptively correct in all cases . . . ." (§ 4053, subd. (k).) This presumption may, however, be rebutted by evidence of various factors, including that "[t]he parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." (§ 4057, subd. (b)(3).)

 Long before these principles were incorporated into statute, it was well established that "[a] child, legitimate or illegitimate, is entitled to be supported in a style and condition consonant with the position in society of its parents." (*Kyne* v. *Kyne* (1945) 70 Cal.App.2d 80, 83 [160 P.2d 910].) "The father's duty of support for his children does not end with the furnishing of mere necessities if he is able to afford more." (*Bailey* v. *Superior Court* (1932) 215 Cal. 548, 555 [11 P.2d 865].)

---

[3]McGinley also contends that the trial court erred by "*reducing* child support by $750 per month" for the blocked college account. This argument is premised on inconsistencies in the reporter's transcript regarding whether the $750 was intended to be a reduction from or an addition to the support amounts otherwise ordered. However, the written order signed by the court makes clear that the $750 for college expenses was awarded *in addition* to the $1,750 for child support and the $400 for child care expenses. Accordingly, we need not consider McGinley's contention, as it is based on a faulty premise.

McGinley places great reliance on two more recent cases that have applied these principles, albeit before the uniform child support guidelines were enacted—*In re Marriage of Catalano* (1988) 204 Cal.App.3d 543 [251 Cal.Rptr. 370] and *In re Marriage of Hubner* (1988) 205 Cal.App.3d 660 [252 Cal.Rptr. 428]. In *Catalano*, the mother sought an increase in child support from $475 to $2,000 per month. The trial court increased the amount to $1,110 and both parents appealed. (204 Cal.App.3d at pp. 547-548.) The father was concededly wealthy, owning at least two residences and numerous automobiles, including a Rolls Royce. The mother's lifestyle had been in decline since separation from the father, resulting in the need for her to invade capital.[4] (*Id.* at pp. 555-556.) The court observed that "[a] child's 'need' for more than the bare necessities . . . varies with the parents' circumstances. [Citations.] [¶] Accordingly, where the supporting parent enjoys a lifestyle that far exceeds that of the custodial parent, child support must to some degree reflect the more opulent lifestyle even though this may, as a practical matter, produce a benefit for the custodial parent." (*Id.* at p. 552.) The *Catalano* court found that, under the circumstances presented, "the only tolerable award would be the full $2,000 that [the mother] requested. Anything less would ignore the tremendous disparity between [the child's] lifestyle and that of his father." (*Id.* at p. 556.)

In *Hubner*, the mother's net disposable monthly income was $1,000 and the father's was over $43,000. The support guidelines then in effect were discretionary and included a statement of "legislative intent that children share in their parents' standard of living." (Former Civ. Code, § 4724, subd. (a).) Pursuant to a schedule developed under these guidelines, the mother asked for child support of not less than $6,000 a month. The trial court awarded $2,215, finding that " 'the child's standard of living must be based on the reasonable lifestyle of both parents . . . . [I]t would be inappropriate for the court to make an order which was a disguised form of support for the [mother] herself as opposed to support directed merely toward the child.' " (*In re Marriage of Hubner, supra,* 205 Cal.App.3d at p. 665.) On appeal, the mother argued that the award was inadequate because it was less than half of the discretionary guideline amount. (*Id.* at p. 667.) Without stating what a proper support payment would be, the *Hubner* court held that the support award of $2,215 constituted an abuse of discretion. In explaining its holding the court found that, "at least where the ability of the noncustodial parent to pay a high level of child support is undisputed, and that level is also consistent with the guidelines, the inability of the custodial parent to make a meaningful financial contribution should not significantly affect the level of support ordered." (*Id.* at p. 668.)

---

[4]Evidence was presented in this case that Herman had recently purchased (and sold) a Bentley automobile, and that McGinley was invading capital for living expenses.

The parties also refer to a case decided under the uniform guidelines—*Estevez* v. *Superior Court* (1994) 22 Cal.App.4th 423 [27 Cal.Rptr.2d 470]. In *Estevez*, the father provided a support "package" in excess of $14,000 per month for his two minor children. The mother was not dissatisfied with the total amount of support, but requested modification as to "the manner in which it was dispensed." (*Id.* at p. 426.) In support of her request, the mother sought detailed discovery of the father's financial records. The father, who had agreed to pay whatever reasonable amount of support the court ordered, resisted discovery under what is now section 4057, subdivision (b)(3), asserting that he was an extraordinarily high-income earner (over $1.4 million per year gross) and that the guidelines amount of support would thus far exceed the needs of the children. Accordingly, the father argued, he was entitled to protection under case law precluding discovery of financial records that have no relevance to the determination of how much child support should be awarded. (*Estevez* v. *Superior Court, supra,* 22 Cal.App.4th at pp. 426-427.) The mother responded that the case law on which the father relied had been abrogated by section 4056, subdivision (a)(1), which requires that a finding be made as to the amount of support that would have been awarded under the uniform guidelines before deviation from that amount is permitted.[5] (22 Cal.App.4th at pp. 427-430.)

The *Estevez* court rejected the mother's argument. Based on the father's extraordinarily high income and his agreement to pay any reasonable amount of child support, the court found it unnecessary and burdensome to go through the exercise of determining the presumptive amount of support under the uniform guidelines. (22 Cal.App.4th at pp. 430-431.) It held, however, that "[i]n such a case, where the extraordinarily high earner resists detailed discovery of his or her financial affairs, the trial court may make such assumptions concerning his or her net disposable income, federal income tax filing status, and deductions from gross income as are least beneficial to the extraordinarily high earner, and thereby satisfy the requirements of Family Code section 4056." (*Id.* at p. 431.)

---

[5]Section 4056 provides: "(a) To comply with federal law, the court shall state, in writing or on the record, the following information whenever the court is ordering an amount for support that differs from the statewide uniform guideline formula amount under this article:

"(1) The amount of support that would have been ordered under the guideline formula.

"(2) The reasons the amount of support ordered differs from the guideline formula amount.

"(3) The reasons the amount of support ordered is consistent with the best interests of the children.

"(b) At the request of any party, the court shall state in writing or on the record the following information used in determining the guideline amount under this article:

"(1) The net monthly disposable income of each parent.

"(2) The actual federal income tax filing status of each parent . . . .

"(3) Deductions from gross income for each parent.

"(4) The approximate percentage of time . . . that each parent has primary physical responsibility for the children compared to the other parent."

## B. *Analysis*

 It would be difficult to imagine any greater discrepancy between a mother's and father's assessment of the father's earnings than exists here. Scant evidence was presented regarding this discrepancy inasmuch as the trial court refused to take testimony from the parties' accountants, and effectively refused to make findings under section 4056, subdivision (b).[6] Nonetheless, as in *Estevez*, the trial court made assumptions that were the most disadvantageous to Herman. In finding him to be an extraordinarily high earner, the trial court necessarily rejected his claim of a monthly negative income of $42,532. Thus, we must assume that the trial court considered Herman's income to be the amount reflected in the declaration of McGinley's accountant—i.e., $116,256 a month, or just under $1.4 million a year.

We do not take issue with *Estevez*'s holding that, despite the seemingly mandatory language of section 4056, subdivision (a)(1), a determination of the guidelines amount may not be necessary in the case of an extraordinarily high earner. However, it is significant that *Estevez* did not involve a dispute over the amount of child support, but rather the manner in which it was dispensed. Indeed, as an aside the *Estevez* court noted that the father would have to comply with discovery requests for his financial records if he were to dispute the support award as unreasonably high. (22 Cal.App.4th at p. 431, fn. 8.) Here, the amount of the support award is in dispute, albeit by the lower earner. This means that we must determine whether the support award of $2,150 constituted an abuse of discretion.[7] We find that it did.

The only basis that we can glean from the record for an award amount of $2,150 is the trial court's comment that this figure "came to mind, because we have a lot of cases like this. And that's usually been the real limits that I've seen." As we view the law, reliance on what has *"usually* been the real limits" is the antithesis of how a trial court should approach what is, by statutory definition, an *extraordinary* situation. The reason that the presumptive guideline amount of support may be rebutted by extraordinarily high earning is set forth in the second clause of the statute: "the amount determined under the formula would exceed the needs of the children." (§ 4057,

---

[6]Following the trial court's finding that Herman is an extraordinarily high earner, McGinley stated, "Your honor, [section 4056] sub. (b). Net monthly disposable income of each parent. For example, you've made a statement that she has a house and therefore she can contribute. I would like to have findings of net monthly disposable income. I'm just trying to make a record here." The court responded by finding McGinley's net monthly disposable income to be zero, and did not address the issue of Herman's income.

[7]We use the $2,150 figure because the additional $750 monthly college fund is not available for support. The issue of the propriety of this separate college fund is not before us, and we express no opinion on it.

subd. (b)(3).) Thus, rather than relying on the usual, the trial court must at least approximate at what point the support amount calculated under the formula would exceed the children's needs, and therefore at what point the income of the party paying support becomes extraordinarily high.

We think it no more than common sense that a parent who rebuts the guidelines support presumption because of an extraordinarily high income not be permitted to pay less support than a parent whose income is not extraordinarily high. Because of the lack of meaningful findings in this case, we have no way of ascertaining the level of income which must have been imputed to Herman in order to yield a figure of $2,150 monthly child support under the guidelines formula. What we can say with certainty is that, if this imputed amount of income were less than the level of income that could properly be considered extraordinarily high, the support award of $2,150 would be prima facie inadequate.

We note that the trial court found that its support award was "consistent with the best interest of the child because it offers the child, especially with the blocked account figure for college education, at the child's present age, the ability at the time that the support orders end when the child reaches the age of 18, to obtain an education commensurate with an education that a child of [Herman] would have." Nonetheless, this conclusionary finding falls far short of providing *reasons* why the level of support that the trial court awarded is consistent with the child's interests as required by section 4056, subdivision (a)(3). (See fn. 5, *ante*.)

As with our conclusion regarding the finding specified in section 4056, subdivision (a)(1), we do not hold that the trial court's failure to comply with subdivision (a)(3) of the statute is necessarily fatal. However, in this case it would appear that the trial court's assessment of the best interests of the child did not give sufficient consideration to the child's right to share in the standard of living of his extraordinarily high earning father. For example, in *In re Marriage of Hubner, supra*, 205 Cal.App.3d 660, a support award of $2,215 a month was considered so low as to constitute an abuse of discretion in the case of a father whose annual income was in excess of $500,000. In *Estevez* v. *Superior Court, supra*, 22 Cal.App.4th 423, a monthly support package in excess of $14,000 was provided by a father who conceded that his gross income was over $1.4 million a year.

Utilizing *Hubner* as our guidepost, it is clear that the child support award in this case constituted an abuse of discretion. We will not, however, fathom a guess as to the dollar amounts that define the parameters of this discretion. A proper exercise of discretion in this case would require a statement of the

reason(s) why a given amount of support awarded would meet the needs of Herman and McGinley's child. It is not enough to simply say that, because the presumption of the guidelines has been rebutted, the "usual" amount of support should be awarded. Moreover, a satisfactory reason for determining that a support award would be adequate requires at least an approximation of Herman's net disposable monthly income and of the point at which that income became extraordinarily high. Without these findings, the support award might be set in an amount lower than that required of an ordinarily high earner, thus according Herman an undue advantage from his ability to rebut the guidelines presumption based on his extraordinarily high earnings. We remand the matter to the trial court to reassess McGinley's support request under the appropriate criteria.

## DISPOSITION

The order under review is reversed and the matter is remanded for a new support determination. McGinley to recover costs on appeal.

Ortega, Acting P. J., and Vogel (Miriam A.), J., concurred.