60 Cal.App.4th 124 (1997)
In re the Marriage of LANA and BRUCE CHANDLER.
LANA CHANDLER, Appellant,
v.
BRUCE CHANDLER, Respondent.
Docket No. G015491.
Court of Appeals of California, Fourth District, Division Three.
December 19, 1997.
*126 COUNSEL
Gerald J. Phillips and Marjorie G. Fuller for Appellant.
Marsha Faith Levine, Michel and Rhyne and Michael L. Michel for Respondent.
OPINION
RYLAARSDAM, J.
After a trial on reserved issues in a marital dissolution proceeding, the court awarded physical custody of the parties' five-year-old daughter Ashley to petitioner Lana Chandler (mother), and ordered respondent Bruce Chandler (father) to pay monthly child support of $3,000. In addition, the court ordered father to deposit $4,000 each month into a trust for certain child-related expenses. Mother appeals, challenging the creation of the trust. We conclude the record does not support the use of a trust and reverse that portion of the judgment.

FACTS
At the time of trial, father had a gross monthly income of $117,000 and a net monthly disposable income of $71,002. He owned a bayfront home with an adjacent boat dock, a condominium in Las Vegas, Nevada, some property in Hawaii, plus several cars and boats. He supported two college-age sons from a prior marriage who had combined monthly expenses amounting to approximately $3,500.
Mother had a college degree and worked before the marriage earning $25,000 per year. At the time of trial, she was a homemaker, receiving $14,000 per month in temporary spousal support and $1,500 in temporary *127 child support from father. Mother's income and expense declaration listed nearly $20,000 in monthly expenses, including over $3,000 for residential costs, $1,300 for food, $2,000 for clothing, $1,800 for child care and education costs and $8,400 in installment payments. A pretrial vocational evaluation concluded she could obtain work outside the home making between $1,200 and $2,000 a month.
The court concluded mother's reasonable monthly expenses were $10,000, of which only $3,000 constituted "the current reasonable needs" of Ashley. Although the guideline formula authorized a monthly child support order of $9,197, the court found the presumptive correctness of this amount rebutted by father's "extraordinarily high income" which exceeded "the needs of the child." Thus, it ordered father to pay mother $3,000 per month as child support.
The court also ordered father to deposit an additional $4,000 per month into a trust for Ashley with mother designated as the trustee. The judgment prescribed the following uses for the trust funds: "1. In payment of additional child support as provided in [former] Civil Code section 4721 [, subdivision](j) [now Family Code section 4062]. The contribution of the trust towards this additional child support shall be pursuant to [former] Civil Code Sections [sic] 4721[, subdivisions] (i)(2) and (3) [now Family Code section 4061]. These payments shall be made directly to the provider of services or benefits whenever this is practicable. [¶] 2. In payment of expenses not covered by the basic support order ... and the additional child support expenses.... This shall include any needs of the child that may hereafter arise and/or not previously considered by the court. Such payments shall be made directly to the primary physical custodian of the child pursuant to the written agreement of the parties or pursuant to court order upon a showing of good cause."
The court explained the trust's purpose is to "provide for additional child support as set forth in [former Civil Code section 4721, subd. (j), now Family Code section 4062] and additional support upon a showing of need not established or in existence at trial...." In addition, it found "the trust funds not invaded each month in connection with any reasonable need of [Ashley] ... shall accumulate thus further providing a means for [Ashley] to participate in the affluence of respondent. The balance of the trust funds, if any, shall be distributed to [Ashley] upon [her] attaining the age of majority. The undistributed trust funds are, in substance, a `savings account' established during the minority of [Ashley], again, relating to the affluence of respondent." When announcing its decision, the court also noted the trust "allows the paying spouse to better rationalize the proposition that there's an affluence participation...."

*128 DISCUSSION
(1a) Although the parties' briefs raise several issues, at oral argument mother conceded a monthly child support award of $7,000 would have been valid under the circumstances of this case, and both parties agreed the sole issue presented is the validity of the trust. Thus, we focus on whether the trial court erred by creating a trust for child-related expenses in this case.
(2) Child support awards are reviewed under an abuse of discretion standard. (McGinley v. Herman (1996) 50 Cal. App.4th 936, 940-941 [57 Cal. Rptr.2d 921]; In re Marriage of Wood (1995) 37 Cal. App.4th 1059, 1066 [44 Cal. Rptr.2d 236]; In re Marriage of Hubner (1988) 205 Cal. App.3d 660, 667 [252 Cal. Rptr. 428].) We cannot substitute our judgment for that of the trial court, but only determine if any judge reasonably could have made such an order. (In re Marriage of Aylesworth (1980) 106 Cal. App.3d 869, 876 [165 Cal. Rptr. 389].) Our review of factual findings is limited to a determination of whether there is any substantial evidence to support the trial court's conclusions. (In re Marriage of Hubner, supra, 205 Cal. App.3d at p. 667.)
(1b) Applying these principles to this case, we conclude the trial court's unilateral decision to create a trust constituted an abuse of discretion. The court established the trust to cover the add-on costs for child care, uninsured medical expenses, child-related education and special needs, and visitation travel now governed by Family Code section 4062, plus other "expenses" for "needs ... that may hereafter arise and/or not previously considered by the court." In so ruling, the court explained the additional support provided an "affluence participation" for Ashley. But the trust also placed restrictions on the use of the funds. For the add-on expenses, the costs must be apportioned between the parties in proportion to their net disposable income, thus limiting use of the trust funds to father's share of these expenses. Payment for add-on expenses must also be made to the service provider if possible. Mother's use of the trust funds for other "expenses" requires either father's written permission or a court order.
We doubt it is ever appropriate to employ a trust when ordering a parent to pay child support, particularly one which, in part, places the custodial parent under the fiscal control of the supporting parent. But even assuming a trust can be used, it must be limited to cases where there is a strong showing of necessity, buttressed by specific, detailed factual findings compelling the need to limit access to support funds. (See In re Marriage of Hubner, supra, 205 Cal. App.3d at pp. 668-669; Goto v. Goto (1960) 187 Cal. App.2d 603, 606-607 [10 Cal. Rptr. 20].) The trial court's explanation for employing a trust in this case falls far short of this standard.
*129 First, we would have no difficulty finding a monthly child support order of $3,000, standing alone, constitutes an abuse of discretion under the facts of this case. Given father's monthly income, plus the findings on mother's reasonable monthly expenses and the fact Ashley spends 90 percent of the time with her, an award of less than one-third the guideline figure, is erroneous. Similar cases have recognized such a drastic deviation from the guidelines constitutes an abuse of discretion. (See McGinley v. Herman, supra, 50 Cal. App.4th at pp. 944-946 [award of $2,150 a month where the supporting parent's monthly income exceeded $116,000; reversed]; In re Marriage of Hubner, supra, 205 Cal. App.3d at pp. 667-669 [trial court erred by awarding less than one-half the discretionary guideline amount where the supporting parent's gross monthly income exceeded $43,000]; In re Marriage of Catalano (1988) 204 Cal. App.3d 543, 552 [251 Cal. Rptr. 370] [error to award $1,110 a month where the supporting parent's gross monthly income was $32,000].)
After finding father had an extraordinarily high income, the court determined Ashley's monthly needs amounted to only $3,000. The court did not explain how it calculated this figure, but apparently it "attributed" $7,000 in monthly expenses to mother and subtracted this sum from the custodial household's total monthly expenses, rather than independently determining the expenses for Ashley. This approach was erroneous.
(3) What constitutes reasonable needs for a child varies with the circumstances of the parties. (White v. Marciano (1987) 190 Cal. App.3d 1026, 1032 [235 Cal. Rptr. 779]; Singer v. Singer (1970) 7 Cal. App.3d 807, 813 [87 Cal. Rptr. 42].) But the duty to support a child covers more than the mere necessities of life if the parent can afford to pay more. (Bailey v. Superior Court (1932) 215 Cal. 548, 555 [11 P.2d 865]; In re Marriage of Catalano, supra, 204 Cal. App.3d at p. 556.) Furthermore, it is presumed "a parent having primary physical responsibility for the children contributes a significant portion of available resources for the support of the children." (See former Civ. Code, § 4720, subd. (a)(3)(I), now Fam. Code, § 4053, subd. (i).) A monthly support award of $3,000 would not even come close to providing Ashley with the amenities provided by the lifestyle she was used to before her parents separated.
(1c) Second, the reasons given for creating the trust are unpersuasive. In part, the court established the trust to provide for the mandatory and discretionary add-on expenses listed in former Civil Code section 4721, subdivision (j) and now governed by Family Code section 4062. But while section 4062 and its predecessor authorize "additional child support" for specified expenses, they do not mention the use of a trust to limit the custodial parent's access to the additional support.
*130 Nor can the trust be premised on a desire to provide for undefined potential expenses, future needs or to establish a savings account for Ashley. In Primm v. Primm (1956) 46 Cal.2d 690 [299 P.2d 231], the Supreme Court held a court's "jurisdiction" to determine the amount of child support "is limited to the conditions and circumstances existing at the time [the order is] made, and the court cannot then anticipate what may possibly thereafter happen and provide for future contingencies." (Id. at p. 694.) The statutory definition of what constitutes support for a child has remained remarkably similar since Primm was decided. (Compare former Civ. Code, §§ 139 and 4700, subd. (a), with Fam. Code, § 150.) Furthermore, absent special circumstances such as completing high school or incapacity, a court has no authority to order a parent to support an adult child. (Fam. Code, §§ 58, 2010, subd. (c), 3901, subd. (a), 3910, subd. (a); In re Marriage of Lambe & Meehan (1995) 37 Cal. App.4th 388, 391-392 [44 Cal. Rptr.2d 641].) Thus, the trial court had no authority to create a fund to meet some unexpected contingency at some indefinite time in the future or to provide for Ashley when she becomes an adult.
Finally, in creating the trust the trial court expressed concern for father's difficulty in rationalizing why his own daughter should participate in his wealth and standard of living. This concern simply ignores the principles underlying child support and gives validity to a desire often expressed by a supporting noncustodial parent: to maintain control over the moneys paid as support. By providing in its order that no portion of the trust funds could be paid directly to mother without father's consent or court order, the trial court gave father substantial control over disbursements from the fund. The law does not provide for such control. Once the court determines the appropriate amount of child support, the supporting parent has no right to determine whether these funds are used to buy groceries, pay rent or pay for music lessons.
We recognize the statewide uniform child support guidelines (Fam. Code, § 4050 et seq.) have been criticized as creating a "harsh" and "inflexible" scheme "which will inevitably cause hardship and inequity." (In re Marriage of Fini (1994) 26 Cal. App.4th 1033, 1042 [31 Cal. Rptr.2d 749], fn. omitted.) But the wisdom of the guidelines is a matter for the legislative branch of government to decide, and the Legislature has mandated a parent support a minor child according to the parent's ability to pay and economic status, even where the support also improves the custodial household's standard of living. (See former Civ. Code, § 4720, subd. (a)(3)(A), (D) & (F), now Fam. Code, § 4053, subds. (a), (d) & (f).)
Moreover, whatever inequity may exist in the current child support statutes, it is not present in this case. Even at $7,000 per month, father's support *131 obligation amounts to less than 6 percent of his gross income. If all facts were identical, except the noncustodial parent's gross earnings were $4,000 per month, the guidelines would fix the monthly support payment at approximately $650 or more than 16 percent of the parent's gross income. As one of Ashley's parents, father has a duty to provide for her within his ability to do so and to satisfy his obligation by paying support directly to mother, the custodial parent.

DISPOSITION
The portions of the judgment on reserved issues establishing a trust and ordering father to deposit $4,000 per month into it are reversed and the matter is remanded to the superior court with directions to enter a judgment ordering father to pay mother $7,000 per month in child support continuing until Ashley dies, marries, or is emancipated or until further order of the court. The trust shall be terminated and any funds currently held by it shall be transferred to mother. In all other respects the judgment on reserved issues is affirmed. Mother shall recover her costs on appeal.
Sonenshine, J., concurred.
SONENSHINE, J., Concurring.
Will the time ever come when our judiciary comprehends family law is not a separate and distinct category over which judges may impose their own concepts and value judgments? Certainly the pronouncements of the trial judge and our dissenting colleague are not encouraging. Simply stated, judges in making their decisions must follow the law. And this is true whether the applicable statute falls within the Family Code or the Penal Code and whether we agree the statute represents good public policy.
SILLS, P.J.
I respectfully dissent. The interests of a child of a very high income parent are best served by having enough money for the child to go to college, graduate or professional school; or, if the child is not so inclined, to have a tidy nest egg at the beginning of adult life. Under the model of child support law proffered by the majority opinion, however, while Ashley will have enough money to buy a thousand outfits for her Barbie doll, purchase several divisions of toy soldiers, or commission her own Nintendo game, she may have nothing for college. After all, as the majority tell us, it is beyond the jurisdiction of a court to make even the slightest provision for a child's college education in a child support order, even in a case where a child has a very high income parent and the statutory guidelines yield a number grossly in excess of a child's current needs.
I cannot believe the Legislature ever intended such an anomalous result. When the income of a supporting parent is so high that it is in substantial *132 excess of a child's reasonable current needs, true "sharing" in a very high income parent's standard of living means putting something away for college or adult life, not squandering it on childish things or indirectly (and gratuitously) increasing the custodial parent's standard of living.

I
California's relatively inflexible statutory scheme for determining child support has come in for a significant amount of judicial criticism. At the lower income level, notes Justice King, the scheme is "creating havoc and undue hardship" by not leaving "payors with sufficient money on which to live." (In re Marriage of Fini (1994) 26 Cal. App.4th 1033, 1042, fn. 10 [31 Cal. Rptr.2d 749].) Even family support bureaus of district attorneys' offices agree. (Ibid.)
At the middle income level the statutory formula gives us absurd results. For example, where both parents work and equally share custody of two children, more money is allocated for the living expenses of the two children than for the adults. (In re Marriage of Fini, supra, 26 Cal. App.4th at p. 1042, fn. 10.)
And at the high end, we have this case, where the formula yields a number beyond any sane correlation with the child's needs. Here, however, the trial judge brought some intelligence and common sense to the process and still managed to comply with the statute. His effort merits a medal, not reversal.
The trial judge reasonably ascertained this five-year-old's needs to be $3,000 a month and made an order providing that those needs would be met. If anything, he erred on the high side. I most strenuously disagree with the dicta in the majority opinion that $3,000, "standing alone" would constitute an abuse of discretion. Even under the flawed statutory scheme we now have a court has every right to depart from the formula number where "the amount determined under the formula would exceed the needs of the children." (Fam. Code, § 4057, subd. (b)(3).)
But the judge was faced by another statutory consideration besides need  the idea that "[c]hildren should share in the standard of living of both parents" (Fam. Code, § 4053, subd. (f)) and the consequence that the formula will yield an unreasonably high number in high income cases  a problem the Legislature recognized in section 4057, subdivision (b)(3) of the Family Code.
What to do? The trial judge's solution was elegant: Put extra money in trust, so it would be available for the child when she needed it for a college *133 education and later in her adult life, and put restrictions on the trust so that the custodial parent did not reap a windfall from the statutory formula.
The judge was well within the law in establishing the trust. Section 187 of the Code of Civil Procedure confers on courts all means necessary to carry their jurisdiction into effect, and where "the course of proceeding [is] not specifically pointed out" by statute, "any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the this code." By setting the child's needs at a very high level ($3,000) and then establishing a trust for yet additional money, the judge harmonized the intent of the Legislature that children "share" in a higher income parent's standard of living while at the same time retaining a decent proportion between the order and the child's needs  even at a high income level.

II
So why do my colleagues find no "strong showing of necessity" to justify the trust? Essentially, they set forth three reasons at pages 129 through 130 of the opinion: (1) $3,000 was too low by itself; (2) child support orders cannot, as a matter of law, provide for future contingencies (they cite the 1956 decision in Primm v. Primm (1956) 46 Cal.2d 690 [299 P.2d 231]); and (3) supporting noncustodial parents ought not to maintain any control over moneys paid as support.
On the first point, my colleagues say, "$3,000 would not even come close to providing Ashley with the amenities provided by the lifestyle she was used to before her parents separated." (Maj. opn., ante, at p. 129.) I respectfully submit that this proposition is self-evidently unbelievable. In the vernacular: Aw come on. Gimme a break. Ashley was a five-year-old for Pete's sake.
What was this "lifestyle" she enjoyed prior to separation? There is a limit to the degree to which a five-year-old needs to live in a manner suitable for profile by Robin Leach on Lifestyles of the Rich and Famous no matter how high his or her parent's income. A child's need for shelter does not mean having money enough to live in a palace worthy of Nebuchadnezzar, complete with hanging gardens and its own river running through it. Suffice to say that the majority opinion does not point to even one "amenity" that $3,000 a month tax free will not afford her.
On the second point, my colleagues misapprehend the significance of the enactment of a child support formula to determine support awards and the need to harmonize differing aspects of the same statutory scheme. Primm v. *134 Primm, supra, 46 Cal.2d 690 was decided long before the enactment of statewide uniform guidelines for child support based on the complicated formulae in Family Code section 4055 which are to be considered "presumptively correct in all cases" except when there are "special circumstances." (See Fam. Code, § 4053, subd. (k).) When Primm was decided, child support was not the functional equivalent of a tax, yielding in some cases revenue far beyond a child's current needs, and therefore it followed that the "jurisdiction" of the trial court was necessarily limited to "conditions and circumstances" existing at the time of the support order. (Primm, supra, 46 Cal.2d at p. 694.)
The enactment of an inflexible formula system, however, changed the legal landscape in which Primm was rooted. Now, in high income cases, inflexible guidelines yield numbers grossly in excess of children's reasonable needs. If the trial judge had taken the rule in Primm to its real logical conclusion, he would have stricken any requirement to pay anything above the $3,000 (very generous) needs level. Rather, the trial judge wisely made an order which provided for what (provident) rich people have always done for their children  put something away for the future.[1]
My colleagues fail to realize that the best way for children to be supported according to their parents' "station in life" (Fam. Code, § 4053, subd. (a)),[2] in a way which "takes into account each parent's actual income," (§ 4053, subd. (c)), in which each parent "support[s]" his or her children "according to his or her ability," (§ 4053, subd. (d)), and where children "share" in their parents' "standard of living" (§ 4053, subd. (f)) is  when the formula amount exceeds the current needs of the children  to make intelligent arrangements for the children's future. Anything else represents a kind of perverse improvidence, in which the law is interpreted, as the majority impliedly do today, to require that money be spent now.
There is nothing in the child support statutes to encourage profligacy, and we should not be so clueless as to interpret those statutes to encourage wanton spending for its own sake. If there is one virtue that the child of rich *135 parents must learn, it is fiscal restraint. Ashley is far better served by an order which puts money away for her education or gives her a nest egg when she starts adult life than by blowing it all on a rich and famous "lifestyle" in her elementary school years.
The third point on which my colleagues rely to strike down the trust is borne of an application of a correct principle to the wrong case. As trial judges, we have all experienced the incessant din from payor parents professing to be willing to make child support payments as long as they didn't have to make those payments to their despised ex-spouses. There is something of a bad reaction to the echo of that din here, where the majority opinion concludes that the law does not provide for "control" by a payor parent of child support funds. (See maj. opn., ante, at p. 130.)
Granted, most of the time the position of the majority opinion is well taken. It is impossible, when it comes to the basic needs of children  shelter primarily  to avoid a practical benefit to the custodial parent (see In re Marriage of Hubner (1988) 205 Cal. App.3d 660, 668 [252 Cal. Rptr. 428]) though again that should not mean that the custodial parent gets to live in the hanging gardens of Babylon at the supporting parent's expense.
By the same token, practical reality demands that the custodial parent have control over moneys paid to meet a child's necessities. Anything else risks micromanagement by an often embittered noncustodial ex-spouse of the day-to-day decisions necessary to the custodial parent's household.
But there can be no hard and fast rule in California precluding any control, in appropriate cases, of at least some money paid as child support. A hard and fast rule would make a mockery of joint legal custody (Fam. Code, § 3085), because it would mean that major decisions within the purview of both parents would be effectively controlled only by the custodial parent. Particularly in a high income case where there is money available to meet more than basic necessities, a hard and fast rule against any kind of control unfairly gives the custodial parent power over the kinds of discretionary spending which would not exist but for the income of the supporting parent. The "power of the purse" would effectively destroy any meaningful joint legal custody arrangement and repose in the hands of the custodial parent the major life decisions affecting the child.
In a high income case the primary benefit to the child from his or her "participation" in the supporting parent's "affluence" is  or, in any intelligent ordering of priorities should be  money for education and for the future, not current extravagance. And that means moneys must be set aside *136 for those purposes  in essence an investment portfolio should be created. If the idea of joint legal custody is to be taken seriously at all, the management of such a portfolio is necessarily a matter of joint control by both parents, not discretionary control by the custodial parent. The money is there for the child, not the custodial parent, and there is no reason to accord the custodial parent a favored status in its management.
In this case, the extra $4,000 was prudently designated for Ashley's education, extraordinary expenses, and, if not used by the age of majority, to give her a start in life.[3] As with the dichotomy between formula number and need, the trial judge's trust mechanism was an elegant solution to reconciling the legal rights inherent in joint legal custody with the need to allow the custodial parent day-to-day management.

III
As judges we are limited in our ability to respond to every need for reform. The Legislature makes the laws; we don't. The trial judge here was  as are we on this court today  bound by the child support statutes found in sections 4050 through 4076 of the Family Code, no matter how much hardship and havoc they might wreak.
The trial judge's order was within the law as written by the Legislature and, in fact, did an admirable job of harmonizing ostensibly conflicting strands with the legislative scheme. While I hope that the Legislature soon acts to correct the inequities which the courts have noted in the guideline system, the fact remains that today's result is not dictated by the plain text of the statute, but by words which the judiciary must necessarily interpret. The trial judge here was not bound to exacerbate a bad situation by an interpretation that exaggerates some of the most absurd tendencies of the legislation. Nor are we.
The majority opinion boils down to this: millions for Barbie dolls, not one cent for college. I respectfully disagree. The trial judge's order should be affirmed.
NOTES
[1] This course was even more prudent than one might at first realize. Lana's child support obligation will end at about the same time when Ashley will be ready for college. (See Fam. Code, § 3901, subd. (a).) Therefore there was even more reason for the trial judge to establish a trust to allow Ashley to share in Lana's current affluence in an intelligent and prudent  as distinct from financially profligate  manner.
[2] If and when the Legislature gets around to revising the child support statutes, perhaps it could adopt some terminology more appropriate to the United States and less to medieval Europe, where "station in life"  e.g., noble, freeman, artisan, serf  really did have some legal significance. Ours is a country, to borrow from Justice Harlan's famous line, that recognizes no castes.
[3] To reiterate: Setting up an investment portfolio for the child of an affluent parent serves the child's best interests much more than the continual dissipation of money so as to inflate the child's supposed current needs.