KONENKAMP, Justice
(concurring in part and dissenting in part).
[¶ 61.] In this case, the father earns a monthly income of better than $176,000. Yet the trial court limited his child support payment to the guideline amount for parents earning a combined monthly income of $20,000. With a single sentence, the court rejected the mother’s entire budget: “The court discredits her expenses as inflated, speculative, and unreliable.” No details were given on how, in the court’s view, all the mother’s expenses were objectionable. Acting under the misbelief that the tables in the child support schedule set the limit for gauging standard of living, the court found that the mother “would be the driving force behind setting a standard of living that is inconsistent with the guideline amounts.” This was an error of law, as well as an abuse of discretion.
[¶ 62.] Our child support schedule, based on average family expenditures, is only a starting point for high-income earners. No presumption exists in South Dakota that the correct child support for high earners is the ceiling amount set out in the schedule tables. On the contrary, “For a combined net income above the schedule in § 25-7-6.2, the child support obligation shall be established at an appropriate level, taking into account the actual needs and standard of living of the child.” SDCL 25-7-6.9 (emphasis added). What measure, then, should be used to determine the “appropriate level” of child support for parents earning extraordinarily high incomes?
[¶ 63.] Certainly, in this type of case, it would be unsuitable to order child support calculated purely by linear upward extrapolation from the income and support amounts listed in the guidelines. Such an arbitrary method would have no necessary relationship to the children’s needs or standard of living, and might well infringe upon the parents’ shared right to make lifestyle choices for their children. When earnings exceed the guideline schedule, therefore, the Legislature left to the courts the work of setting the “appropriate” child support, most likely because such awards defy mathematical formulas. On the other hand, limiting the award to the ceiling amount provided in the base schedule ignores the legislative command that for higher level income the “child support obligation shall be established at an appropriate level” considering needs in context with standard of living. See id. (emphasis added). Since high-income families live well above subsistence levels, both needs and standard of living must be considered in the parents’ distinctive circumstances. Where high wealth is concerned, necessities and luxuries are relative.
[¶ 64.] In affirming the child support award, this Court proclaims that trial courts are not required to go above the guidelines, without considering the trial court’s erroneous view of the law and the significant variance this case presents. Little guidance can be gleaned from the cases the Court cites. In Bloom, the paying parent earned something over $4,000 a *646 month, 498 N.W.2d at 217; in Billion, $7,000 a month, 1996 S.D. 101, ¶ 39, 553 N.W.2d at 235; and in Evans, $25,000 a month, 1997 S.D. 16, ¶ 18, 559 N.W.2d at 244. But here the father’s income is not simply off the charts — it dwarfs the earnings in those other cases. This parent earns an extraordinary income, far beyond anything contemplated in the guidelines. Yet the trial court capped the child support at the guideline amount for parents earning a fraction of what the father earns here. In such circumstances, closer appellate review is required than merely incant-ing formulaic language about discretion. And it certainly lends no weight to the Court’s decision that it declares that the parents’ standard of living is “equivalent.” The father has holdings of sixty million dollars and earns over $176,000 a month; the mother has something less than five million and earns $8,756 a month. How does that compute to an equal standard of living?

1. Standard of Living

[¶ 65.] Children should share in their parents’ standard of living. In measuring standard of living for child support purposes, the test is not whether the high-income payer chooses to live a frugal lifestyle, as the Court here seems to suggest; the test is to determine the standard of living the children would have enjoyed had it not been for the divorce. See Billion, 1996 S.D. 101, ¶ 41, 553 N.W.2d at 235 (citing Ochs, 538 N.W.2d at 531). That measure incorporates both parents’ values. Indeed, our child support guidelines are premised on the belief that children are entitled to the same level of expenditures they would have received had the parents lived together and combined their financial resources. See Report of the South Dakota Commission on Child Support (December 2008). And the job of the trial court is to reconcile the critical tension between competing parents to ascertain the appropriate standard of living.
[¶ 66.] In jurisdictions where these questions arise more frequently, courts have embraced “the recognition that the appropriate standard of living for a child of affluent parents is affluence matching that of the parents....” Laura W. Morgan, Child Support Guidelines Interpretation & Application § 8.07, Deviating from the Guidelines (2013). One parent cannot control the children’s standard of living. Id. Seldom have we had occasion to examine child support for extremely high-income earners such as here, but in cases where the income was well above the guidelines, we have generally espoused a similar view. See Ochs, 538 N.W.2d at 531 (child can “partake in some of his father’s high standard of living while he is with his mother”); Evans, 1997 S.D. 16, ¶ 17, 559 N.W.2d at 244 (child support provided “luxurious lifestyle” for the children).
[¶ 67.] It is always a matter of balance, of course, between setting an amount that will care for the children’s actual needs and permit them to enjoy a standard of living commensurate with what they would have had if the parents had not been divorced. This does not mean that children must be supported at the highest standard of living attainable by the parents’ income.[15] Overreaching in the name of benefitting the children should be discouraged, but the notion that the parent receiving child support should not benefit at all in the children’s standard of living is simply unrealistic. When children share in the standard of living of *647 both parents, child support may appropriately improve the standard of living of the receiving parent in order to improve the lives of the children.[16]
[¶ 68.] As other courts have noted, child support should provide the receiving parent with adequate resources to support the children in a lifestyle the parents would have had if they remained together. See Nash v. Mulle, 846 S.W.2d 803, 805 (Tenn.1993) (one of the primary goals of guidelines is to allow children of wealthy parents to share in a very high standard of living); see also Bagley v. Bagley, 98 Md.App. 18, 632 A.2d 229, 238 (1993) (children of affluent noncustodial parents are entitled to benefits of affluent standard of living). Reasonable needs of affluent children may include items that would be frivolous for children of less-well-off parents. In re Marriage of Nimmo, 891 P.2d 1002, 1007 (Colo.1995) (children entitled to “fruits of one parent’s good fortune”). Where courts fail to account for a high earner’s standard of living in setting child support, an abuse of discretion occurs.[17]

2. ' Additional Amounts

[¶ 69.] The Court makes much of the fact that the father must pay, in addition to child support, ninety-five percent of the children’s expenses. But most of these payments go toward the parents’ special-needs daughter. These costs include supplemental expenses, such as therapy, her potential SEIT, nutritional supplements, and possible private school tuition. Also, the father pays uncovered medical costs, and the children’s health insurance. None of these amounts goes toward the children’s standard of living. This Court also emphasizes that the parents share custody of the children. Yet the father did not request any abatement or cross-credit, and the circuit court specifically found that “[abatement or shared parenting cross-credit are discretionary and are not warranted under the facts of this case.”
[¶ 70.] Considering the father’s income of over $176,000 a month and the parents’ combined income of $185,000 per month, the child support award of $2,815 for two children was inadequate to provide for their needs and standard of living. This matter should be reversed and remanded for a new determination of “appropriate” child support based on the record and arguments of counsel.[18]

. This is sometimes called the "Three Pony Rule.” No child, no matter how wealthy the parents, needs more than three ponies. In re Marriage of Patterson, 22 Kan.App.2d 522, 920 P.2d 450, 455 (1996).

. In re Marriage of Cheriton, 92 Cal.App.4th 269, 294-95, 111 Cal.Rptr.2d 755 (2001); Strahan v. Strahan, 402 N.J.Super. 298, 953 A.2d 1219, 1225-26 (2008); Nordstrom v. Nordstrom, 965 S.W.2d 575, 579-80 (Tex.Ct.App.1997).

. See McGinley v. Herman, 50 Cal.App.4th 936, 944-46, 57 Cal.Rptr.2d 921 (1996) (reversing an award of $2,150 a month where the supporting parent’s monthly income exceeded $116,000); In re Marriage of Hubner, 205 Cal.App.3d 660, 667-69, 252 Cal.Rptr. 428 (1988) (trial court erred by awarding less than one-half the discretionary guideline amount where the supporting parent's gross monthly income exceeded $43,000); In re Marriage of Catalano, 204 Cal.App.3d 543, 552-53, 251 Cal.Rptr. 370 (1988) (error to award $1,110 a month where the supporting parent's gross monthly income was $32,000).

.Reasonable appellate attorney's fees should be awarded to the mother in connection with this issue.